792 P.2d 345

Jerry BROWER and Connie Brower,
husband and wife,
Plaintiffs–Appellants,

v.

E.I. DuPONT DE NEMOURS AND
COMPANY, aka DuPont,
Defendants–Respondents.

No. 17920.

Supreme Court of Idaho.

May 24, 1990.

Dean Williams, Blackfoot, for plaintiffs-appellants.

Merrill & Merrill, Pocatello, for defendants-respondents. N. Randy Smith argued.

McDEVITT, Justice.

Appellant, Jerry Brower, filed suit on February 4, 1987 for damages resulting from the application of a DuPont herbicide to his farm. Brower was introduced to DuPont's "Glean" when he inquired about a means of eliminating a thistle problem. Glean at that time was still an experimental product, so Brower obtained the product through DuPont's experimental use permit, although the actual purchase of the product was from a local co-op.

In October of 1982, Brower applied the herbicide to his fields. The label on the product at the time of application stated that in high pH soils, crops other than wheat or barley could not be planted within 24 months after application. Brower planned to grow grains for two years, and then rotate the soil back to the normal potato crop in the 1985 growing season.

In late 1982, DuPont released another brochure, along with correspondence to experimental users, including Brower, warning that the dissipation rate of Glean could be as long as four years in high pH soils, and that users should not attempt to grow any crops other that wheat or barley before a field bioassay (growth of a test crop)

confirms that Glean residues have dissipated.

Brower successfully raised wheat on the treated soil during 1982–84. In 1985 he planned to plant potatoes, but DuPont's field representative advised him that a bioassay would be required. Growing a test crop was not feasible under the circumstances, so DuPont tested soil samples in its Delaware office by means of a secret process using lentil roots. The October, 1985, test determined that some of the soil was still too contaminated to grow potatoes.

Brower's means of gaining a livelihood from his farm is to lease the land to other growers to plant potato crops. DuPont agreed to bear the financial loss incurred by a failed crop if Brower would get a renter who would attempt to grow potatoes on the land during the 1985 season. Brower was unable to find a renter. A settlement was negotiated between Brower and a DuPont representative, and DuPont gave Brower a $30,000 credit for other chemicals in exchange for a release of claims for damages sustained in a 200 acre field in 1986. At Brower's request the settlement was limited to 1986, and did not include damages that might be sustained in future years. In 1986, further soil samples showed that the land was still contaminated. Brower was again unable to find a renter for the 1987 season. DuPont did not offer further assistance, and Brower filed suit, claiming damages on 150 acres in 1985, 280 acres in 1986 (for which DuPont had paid damages on 200 acres) and 350 acres in 1987.

· DuPont claims that Brower became aware of the loss that he could sustain in future years in the fall of 1982, and that his claim is therefore barred by the statute of limitations. Brower claims that the statute of limitations did not begin to run until 1985. He argues that the damages were not discoverable until it was established by tests in late 1985 that the herbicide had not dissipated from the soil in the two year period as originally represented. In any event, he maintains that the issue of when a reasonable person would have discovered the damages is an issue for the trier of fact.

The district court granted DuPont's Motion for Summary Judgment and dismissed the complaint with prejudice; DuPont was awarded $8,985.30 in attorney's fees. The district court's rationale in granting summary judgment relevant to this appeal are as follows: Brower failed to comply with the three year statute of limitation under I.C. § 5–218(4) for misrepresentation and the two year statute of limitations under I.C. § 6–1403 for product liability; the court rejected the theory that partial payment acted as estoppel to DuPont's assertion of the statute of limitations as a defense; and there was a lack of privity under a contractual cause of action.

■ We affirm the district court's ruling that Brower's action is barred by the statute of limitations. Whether the two year statute of limitations for product liability, the three year statute of limitations for misrepresentation, or the four year statute of limitations for an implied contract is applied, Brower's action is time barred. Therefore, we do not address the question of whether there was a lack of privity between the parties in the context of a contract claim.

The district court's determination that there was no material issue of fact in the case was correct. Although Brower argues that the time the injury was discovered is a triable issue, we think the facts clearly indicate that the cause of action arose in the fall of 1982.

Brower was informed in a letter from DuPont dated October 6, 1982, that "the time when a crop other than wheat or barley can be grown without risk of injury can, under certain conditions, be longer than the 18 to 24 months originally indicated." Sometime in late 1982, DuPont also released a new label for the product, which Brower received, stating that:

Small quantities of "Glean" can remain in the soil and injure crops other than wheat or barley.... On high pH soils (7.0 to 7.5) a 48 month interval or more may be required before completion of a

successful field bioassay and subsequent planting of the next crop.

Having received these communications, Brower was put on notice that he would almost certainly not be able to plant potato crops in 1985, and might have to wait until at least the 1987 growing season to plant potatoes again. At that time, the statute of limitations began to run. Brower had only until the fall of 1986 to file an action even under the longest possible limitations period, that of implied contract under I.C. § 5–217. This case was not filed until February of 1987.

Brower cites *Galbraith v. Vangas, Inc.*, 103 Idaho 912, 655 P.2d 119 (Ct.App.1982), for the proposition that the cause of action accrues at the time of the actual injury, and not at the time of the wrongful act. In that case, the Court of Appeals held that a claim was not barred by the statute of limitations where the harm, the explosion of a water heater, occurred 18 years after the negligent act which caused the injury. The court in that case stated:

> The cause of action accrues, and the statute of limitations begins to run, when a party may sue another. In cases involving alleged negligence in connection with a product, the cause of action has been held to accrue when negligent conduct is combined with causally connected, resulting harm.

*Galbraith*, 103 Idaho at 915–16, 655 P.2d 119 (citations omitted). This holding was affirmed by this Court in *Lido Van & Storage, Inc. v. Kuck*, 110 Idaho 939, 719 P.2d 1199 (1986). The above cited language is consistent with our holding in the present case. Brower could have brought suit as soon as he learned of the new information concerning the dissipation rate of Glean. At that time he knew he had been damaged; he had information to prove that a misrepresentation had been made or that an implied contract had been breached.

Brower also cites *Werner v. American–Edwards Laboratories, Inc., Div. of American Hospital Supply Corp.*, 113 Idaho 434, 745 P.2d 1055 (1987), where this Court stated that " 'a cause of action does not accrue until the fact of injury becomes ascertainable,' and we will not require a plaintiff to maintain suit absent such 'objectively ascertainable' damage." *Werner v. American–Edwards Laboratories, Inc., Div. of American Hospital Supply Corp.*, 113 Idaho at 438, 745 P.2d 1055. The holding of that case does not advance Brower's position. His damages may not have been measurable with absolute certainty in the fall of 1982, but their extent was capable of proof, namely the proceeds of leasing land for potato crops over a four year period against the yield from wheat or barley.

■ Brower also argues that DuPont is estopped from asserting the statute of limitations as a defense. He argues that the compensation provided by DuPont in the form of $30,000 worth of chemicals for losses sustained during 1986 met the requirements of I.C. § 5–238, which provides that a partial payment of principle or interest is equivalent to a new promise to pay the residue of a debt. This allows for full recovery of a debt already barred by the statute of limitations. That section also provides that an acknowledgment or promise in writing and signed by the party to be charged may constitute sufficient evidence of a new or continuing contract in order to allow recovery for a debt where the statute of limitations bars recovery under the original contract.

There are two documents relevant to this issue in the record. The first is a letter from the product manager of Glean herbicide at DuPont, recommending that Brower rent the fields treated with Glean for potato production during the 1986 growing season:

> By making this recommendation, we are accepting financial responsibility for any significant reduction in yield and grade of potatoes grown in areas previously treated with "Glean." ... We believe you have the responsibility to take all the steps necessary to maximize the financial gain and minimize potential losses from the use of those fields. Moreover, our responsibility to pay you the difference between cereal grain rent and potato rent is dependent on your obligation to

exercise all reasonable effort to obtain a potato renter.

When Brower was unable to find a renter ready to assume the risk of crop failure, Brower and DuPont negotiated the second document, entitled "Settlement and Release of Claims," which stated, in part:

To avoid litigation and to settle your claim in a friendly manner, we agree to provide you with 340 gallons of "Lexone" 4L herbicide (sent to Bingham Co-op) in consideration of your agreement to release DuPont and its distributor and/or dealer that sold the product to you from all debts, claims, damages, and liabilities arising from or in any way connected with this experience. It is understood that this agreement is not intended, nor should it be construed, as an admission of liability on the part of DuPont—its distributors or dealers.

This document was signed by both Brower and a DuPont representative. It included handwritten notations in the margin, initialed by both parties, limiting application of the settlement to a particular 200 acre field, and excluding losses incurred during 1987.

The district court held that the compensation involved would not toll the statute of limitations or be admissible at trial as evidence of payment because the instrument providing for the settlement with Brower expressly denied liability. We affirm the holding of the district court, but for different reasons.

The aforementioned documents do not amount to payment of "principal or interest ... equivalent to a new promise to pay the residue of the debt" under I.C. § 5–238, nor do they acknowledge a promise to pay anything other than that for which DuPont has actually compensated Brower.

I.C. § 5–238 applies where a debt may normally not be recovered due to the application of the statute of limitations, but where the debtor reinstates the running of the limitations period by acknowledging the debt, either by a signed writing or through partial payment.

Partial payment is construed as a substitute for a signed writing; it constitutes a voluntary acknowledgement of the debt which fairly implies a promise to pay the balance owing. 51 Am.Jur.2d § 366. In order to remove the debt from the operation of the statute of limitations, partial payment must be made

under circumstances such as warrant a clear inference that the debtor recognizes the whole of the debt as an existing liability. The payment must be distinct, unequivocal, and without qualification, such as to indicate the intent of the payor that it constitute a part payment of the debt in question and to indicate his willingness, or at least his obligation, to pay the balance.

*Id.* (Footnotes omitted.)

In this case, the debt which is acknowledged by the letter is the loss sustained by Brower during the growing season of 1986 for a particular acreage, and not a debt for any and all future losses. Brower agreed to compensation for 1986 in the Settlement and Release of Claims for exactly $30,000 worth of farm chemicals. Thus, the debt which was acknowledged in that document was fully paid by DuPont. Brower's present claims for damages sustained to other fields and during other growing seasons remains barred by the statute of limitations.

Accordingly, we uphold the district court's grant of summary judgment in favor of DuPont.

There remains to be decided the issue of the district court's award of attorney's fees to DuPont. The district court held that "Idaho Code § 12–120(3), (as amended in 1986) compels the court to award reasonable attorney's fees to the prevailing party in actions involving 'any commercial transaction.' *Myers v. Vermaas*, 114 Idaho 85, 753 P.2d 296 (Ct.App.1988)." We reverse this award.

Idaho Code § 12–120(3) was amended in 1986 to provide that "[i]n any civil action to recover ... in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, ... The term 'commercial transaction' is defined to

mean all transactions except transactions for personal or household purposes."

There is little Idaho case law discussing the application of the phrase "commercial transaction" in the context of I.C. § 12–120(3). However, there is ample authority interpreting other terms in the statute which is applicable to this issue.

For example, the statute provides for an award of attorney's fees to the prevailing party in an action to recover on a negotiable instrument. In *Idah–Best, Inc. v. First Secur. Bank, N.A.,* 99 Idaho 517, 584 P.2d 1242 (1978), this Court stated, in *dicta,* that where the suit concerned the wrongful manner in which such an instrument was handled by the payor bank, the action was not one to recover on the instrument itself, and thus an award of attorney's fees was not appropriate.

In *Chenery v. Agri–Lines, Inc.,* 106 Idaho 687, 682 P.2d 640 (Ct.App.1984), the Court of Appeals addressed the application of the provision allowing attorney's fees in an action to recover on a contract relating to the purchase or sale of goods. The court noted that, "[i]t is not enough that the *transaction* between the parties relate to the purchase or sale of goods. The *action* itself must be one 'to recover ... on [the] contract.' " *Chenery,* 106 Idaho at 690, 682 P.2d 640 (emphasis in original).

Similarly, in *T–Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct. App.1982) (no petition for review filed), the Court of Appeals, in denying an award of attorney's fees on appeal under I.C. § 12–120's provision relating to contracts, stated that, "[a]lthough there was a bailment between the Club and Blough, the Club's underlying cause of action was grounded in negligence, not in contract." *See also Clement v. Franklin Invest. Group, Ltd.,* 689 F.Supp. 1575 (D.Idaho 1988) (where claim was for breach of contract, attorney's fees were justified despite court's ruling that a contract did not exist); *McKinney v. Kirkness,* 107 Idaho 740, 692 P.2d 384 (Ct.App.1984) (although original action did not bring I.C. § 12–120 into operation, where defendant prevailed on contractual counterclaim for the sale of goods,

defendant was entitled to attorney's fees under that section).

█ These cases lead to the conclusion that the award of attorney's fees is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover. To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy justified only by statutory authority to a matter of right in virtually every lawsuit filed.

█ In the present case, Brower's complaint alleges that DuPont's representations induced his reliance, causing him to purchase and apply Glean to his land, resulting in damages. The only commercial transaction involved is the purchase by Brower of the DuPont chemicals from a local co-op. If there is any contract involved in this case it is not a contract surrounding that purchase, but one that might have been implied from the facts surrounding the relationship between DuPont and Brower. We cannot say that this case revolves around a commercial transaction sufficient to implicate the terms of I.C. § 12–120(3).

Thus, we reverse the district court's award of attorney's fees to DuPont. No costs are awarded on appeal.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.