965 P.2d 195

**TRI STATE LAND COMPANY INCOR-
PORATED, a Washington corpora-
tion, Plaintiff–Appellant,**

v.

**William D. ROBERTS and Marguerite M.
Roberts, husband and wife; Wilmar, a
general partnership, Defendants–Re-
spondents.**

No. 23512.

Court of Appeals of Idaho.

July 30, 1998.

Malcolm S. Dymkoski, Coeur d'Alene;
John Davis Paul III, Spokane, for Plaintiff-
Appellant. John Davis Paul III argued.

Turner, Stoeve & Gagliardi, P.S., Spokane,
for Defendants-Respondents. Mary Jane
Parry argued.

SCHWARTZMAN, Judge.

Tri State Land Company appeals from a district court decision granting summary judgment in favor of William and Maguerite Roberts and dismissing Tri State's claim with prejudice. Tri State argues that the court failed to consider a "declaration" in its summary judgment decision and that it should be given the opportunity to argue the merits of the motion. For the reasons stated below, we affirm the district court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On May 28, 1992, Tri State Land Company Incorporated (Tri State) entered into a joint venture agreement with William Roberts. The agreement referenced two parcels of land owned by Roberts on the Spokane River and provided that the purpose of the agreement was: "To join together the owner of certain property with individuals of ability to enhance the value of said property thru zoning upgrades and packaging to achieve marketing at the greatest return." Roberts retained ownership of the property while submitting the property to the administration of Tri State. The agreement further provided as follows:

> Parties agree to annexation of the property into the city of Post Falls, Idaho with the maximum zoning allowable. Parties agree that the most favorable presentation of the property is a modestly priced Planned Unit Development. Upon achieving annexation and P.U.D. approvals from the city of Post Falls it is the intention of the parties to market the property utilizing the services of the Tri State real estate brokerage.

> Roberts shall retain ownership of the property while submitting the property to the administration of Tri State. Roberts shall provide the owner approvals required by Tri State and the city of Post Falls to accomplish the agreed favorable property re-classification and Roberts shall occur [sic] no cost of survey, engineering, architectural design, or other service expenses related to the re-classification efforts of

the property. Roberts shall be 'held harmless' by Tri State from any action impacting the property as a result of Tri State's actions. Roberts shall not be obligated to remunerate Tri State in any manner other than described by this agreement.

> Should this Joint Venture Agreement fail to provide the desired results and the agreed time period for the efforts lapse, the parties shall not be obligated to each other in any manner. Roberts shall not create any lien against the property that exceeds the amount stated herein as value contributed to the Joint Venture.

> Tri State assumes full responsibility for the efforts expected to be expended in the designation of Planned Unit Development property status. Such efforts include survey and plat engineering, architectural design, availability and permissions providing required utility services, and any other costs including such as extraordinary costs incurred providing an additional well water source to the property. All interchanges, conference's [sic] or encounters with the governing authorities in pursuit of P.U.D. approval will be conducted by Tri State.

> The parties agree to the following:

> 1) Roberts will submit the property to this agreement while retaining deed and ownership and as a result of a subsequent sale of the property [sic] will accept an amount equal to property acquisition costs for the property plus provisions of item 2 below.

> 2) The property shall be listed for sale with Tri State LAND COMPANY real estate brokerage for $500,000.00. It is mutually agreed that this sales price will not be negotiated below $400,000.00. The listing time period will be of two (2) parts. The property will be listed initially for what ever period of time that is required to achieve P.U.D. approval from the property governing body. The second listing period shall commence with the date of P.U.D. approval and run for one (1) year thereafter. Commission is 10% of sale price.

The agreement also provided specifics on how the proceeds of the sale of the property would be disbursed. In a nutshell, the purpose of the joint venture agreement was for Tri State to have Robert's property annexed to the city of Post Falls, for Tri State to obtain a Planned Unit Development approval from Post Falls to develop residential units, and for Tri State to act as the real estate agent in the eventual sale of the property.

In October of 1992, Tri State submitted a request for annexation to the City of Post Falls. The Post Falls Planning and Zoning Commission rejected the annexation request, and Tri State then appealed to the Post Falls City Council. The City Council approved the annexation request subject to an annexation agreement being entered into. However, Tri State did not complete an annexation agreement and the property was never annexed. Tri State also submitted a request for a Planned Unit Development (P.U.D.) to the City of Post Falls in August of 1993. This P.U.D. request was rejected by the Post Falls Planning and Zoning Commission on September 14 and Tri State did not submit any further P.U.D. proposals.

On October 8, 1993, Tri State entered into an exclusive listing contract with Roberts, which granted Tri State the exclusive right to sell Roberts' property that was the subject of the joint venture agreement. This contract was scheduled to expire on October 5, 1994. In the interim, Tri State and Roberts had several meetings, during which Tri State informed Roberts that a P.U.D. would not be approved in any form by the Post Falls Planning and Zoning Commission. Roberts continually advised Tri State that he wanted to get the property annexed to the City of Post Falls, especially because of the opportunity for sewer and water services. Tri State later advised Roberts that it was going to look at other possible development ideas, and Tri State also made efforts to sell the proper-

ty by advertising in the local newspaper. Tri State proposed a type of reservation agreement as part of the advertisements to sell the property. However, in late March Roberts advised Tri State that he would not agree to sell the property under the proposed method because the joint venture agreement had not been fulfilled; that is, that the property was not annexed to the City of Post Falls and a Planned Unit Development had not been approved.

On May 16, 1994, Roberts sent a letter to Tri State terminating the joint venture agreement and the exclusive right to sell listing contract.[1] Tri State filed the joint venture agreement in the Kootenai County Recorder's office and on October 20, 1995, filed suit against Roberts, claiming money damages.

Roberts appeared and answered the complaint. On October 21, 1996, Roberts filed a motion for summary judgment, supported by his own affidavit. Tri State did not timely respond to the motion for summary judgment; rather, on November 13, 1996, five days prior to the summary judgment hearing, Tri State filed a document entitled "Declaration of Glen McIntosh" along with a cross-motion for summary judgment.

On November 14, 1996, Roberts filed a motion to strike Tri State's response, arguing the cross-motion was untimely and that the declaration of Glen McIntosh was not in compliance with the requirements of Idaho Rule of Civil Procedure 56(e). The next day Tri State filed a motion to continue the summary judgment hearing, but made no attempt to cure the alleged defect in Glen McIntosh's statement, despite having notice of the defect several days prior to the hearing. The district court denied Tri State's motion for continuance and excluded from consideration the declaration of Glen McIntosh on the grounds

1. Roberts' letter stated, in relevant part:
    This letter is written to resolve the circumstances surrounding the aforementioned property. Tri State Land Company has failed to perform under the terms of the Joint Venture Agreement by and between Tri State Land Company and William D. Roberts dated May 28, 1992. As a result of Tri State Land's failure to carry out its part of the agreement

we hereby rescind and cancel that agreement in its entirety. Further, the Exclusive Right to Sell Listing Contract by and between William D. Roberts and Tri State Land Company dated October 8, 1993 is hereby canceled and you are instructed to cease offering the property for sale in any manner, including by "reservation form."

that it did not meet the requirements of a sworn and verified statement, that it contained hearsay information, and that it lacked a showing that the statements were made on firsthand knowledge. The district court granted Roberts' motion for summary judgment, thereby dismissing Tri State's claims against Roberts.

Tri State appeals to this court.

## II.

## ANALYSIS

**A. Was The District Court Correct In Refusing To Consider The Declaration Of Glen McIntosh When Ruling On The Motion For Summary Judgment?**

In support of its cross-motion for summary judgment, Tri State filed a self-styled "Declaration of Glen McIntosh." This declaration is unsworn and makes no showing or statement that the information contained therein is based upon personal knowledge.

Idaho Rule of Civil Procedure 56(e) states: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

I.R.C.P. 56(e).

In *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990), the plaintiff filed a self-styled "affidavit" which was not subscribed and sworn to under oath or affirmation as required of an affidavit by Idaho Code § 51–109. Accordingly, the Court found the facts as stated in the "affidavit" were not under oath as required by I.R.C.P. 56(e). *Evans,* 118 Idaho at 218–19, n. 9, 796 P.2d at 95–96, n. 9; *see also State v. Shama Resources Ltd. Partnership,* 127 Idaho 267, 271, 899 P.2d 977, 981 (1995) (holding that affidavits submitted in response to summary judgment were properly rejected because they were not based on personal knowledge, were insufficient and conclusory in nature, and contained statements of hearsay that would not be admissible into evidence); *Cates v. Albertson's Inc.,* 126 Idaho 1030, 1034, 895 P.2d 1223, 1227 (1995) (holding that affidavits could not be considered in opposition to motion for summary judgment because they did not affirmatively establish that the affiants had personal knowledge of the facts contained therein).

In ruling that the declaration of Glen McIntosh was inadmissible the district court stated:

> The Court declines to consider the declaration of Glen McIntosh because it does not meet with the requirements of a verified statement either as an affidavit or otherwise and the Court will—[sic] cannot recognize a declaration for purposes of summary judgment.
>
> Counsel ... has indicated that it contains hearsay information. Beyond that it doesn't appear to have a declaration that McIntosh's statements are made based on firsthand knowledge. In other words, testimony admissible at trial.
>
> It would appear that the Court would have some difficulty determining what is and is not firsthand knowledge of his, absent some statement based on his personal knowledge so the Court will adhere to the requirements that are applicable and that declaration, therefore, cannot be considered.

We have reviewed the declaration at issue and note that it is unsworn, makes no statement that the facts contained therein are based on personal knowledge, and further

contains hearsay information. In addition, it is cast in the form of a rambling stream of consciousness narrative of some ten pages in length.

■ When reviewing a trial court's ruling on a summary judgment motion, we will consider only proof that complies with Rule 56(e), being based upon personal knowledge and containing material that would be admissible at trial. *Cates,* 126 Idaho at 1033, 895 P.2d at 1226. Additionally, "[u]nsworn statements are entitled to no probative weight in passing on motions for summary judgment." *Golay v. Loomis,* 118 Idaho 387, 391, 797 P.2d 95, 99 (1990), *citing Camp v. Jiminez,* 107 Idaho 878, 882, 693 P.2d 1080, 1084 (Ct. App.1984). Therefore, the declaration was properly excluded from consideration by the district court in ruling on the cross motions for summary judgment.

### B. Was Summary Judgment Properly Entered In Favor Of The Roberts?

We review the district court's ruling on a motion for summary judgment by applying the same standard properly applied by the district court when originally ruling on the motion. *Farmers National Bank v. Shirey,* 126 Idaho 63, 878 P.2d 762 (1994). When faced with an appeal from summary judgment, this Court must determine whether the pleadings, depositions, and admissions on file, together with affidavits, show there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. *City of Sun Valley v. Sun Valley Co.,* 128 Idaho 219, 912 P.2d 106 (1996). The nonmoving party is to be given the benefit of all favorable inferences which reasonably might be drawn from the evidence and all doubts are to be resolved against the moving party. *Id.* However, in *Riverside v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982), the Idaho Supreme Court held that where the evidentiary facts are not disputed and the trial court will be the trier of fact, the trial court is not constrained to the normal summary judgment procedure of drawing only those inferences which are favorable to the party resisting summary judgment. Rather, the trial court may draw those inferences deemed most probable in

light of the underlying facts. *Riverside,* 103 Idaho at 519, 650 P.2d at 661. Resolution of the possible conflict between the inferences is within the responsibilities of the trial court. *Cameron v. Neal,* 130 Idaho 898, 950 P.2d 1237 (1997).

■ In its cross-motion for summary judgment, Tri State states: "In the current case, there are no genuine triable issues of material fact. The only issue which is in dispute is whether or not the defendant's unilateral recision of the contract is a breach or was justified because the alleged contingency was not met. The question is simply a legal one as to the effect of the contractual language." Additionally, Tri State has submitted nothing in response to summary judgment which is in the proper form as required by I.R.C.P. 56(e); in fact, there is nothing properly verified in the entire record filed on behalf of Tri State, *including* its complaint. Therefore, in reviewing the district court's ruling on the motion for summary judgment we are constrained to the affidavit of Roberts, which is properly sworn to under oath and based upon personal knowledge. Roberts attests that the joint venture agreement was drafted by Tri State and that the purpose and intent of the joint venture agreement has not been accomplished; Robert's property has not been annexed to the City of Post Falls, and there is no P.U.D. approved for the property. Moreover, Tri State never completed an annexation agreement with the city, its P.U.D. proposal was denied and never appealed, and Tri State never resubmitted a new P.U.D. proposal in the interim.

■ The primary aim in interpreting contracts is to ascertain the mutual intent of the parties at the time their contract is made. The intent should, if possible, be ascertained from the language of the agreement, as the words used by the parties are deemed to be the best evidence of their intent. *Farnsworth v. Dairymen's Creamery Assoc.,* 125 Idaho 866, 876 P.2d 148 (Ct.App.1994). The joint venture agreement clearly assumes that the property is to be annexed and granted P.U.D. approval, so that Tri State can attempt to sell the property: "Upon achieving annexation and P.U.D. approvals from the city of Post Falls it is the intention of the

parties to market the property utilizing the services of the Tri State real estate brokerage."

In the joint venture agreement, the parties expressly state that annexation and P.U.D. approval is to be achieved prior to marketing and sale of the property. Tri State did not complete annexation of the property, nor was it able to achieve P.U.D. approval. Thus, Roberts did not breach the joint venture agreement when he unilaterally canceled it.[2]

The decision of the district court granting summary judgment for the Roberts and dismissing Tri State's claim is hereby affirmed.

### C. Attorney Fees

■ Roberts asserts that he, "as the prevailing party at the trial court, is entitled to attorney's fees and costs pursuant to Idaho Code § 12–120(3) in that the subject of the action is a commercial transaction."

■ Idaho Code § 12–120(3) states that the prevailing party must be given reasonable attorney fees in any "commercial transaction." "Commercial transaction" is defined as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). In *Brower v. E.I. DuPont De Nemours and Co.*, 117 Idaho 780, 792 P.2d 345 (1990), the Idaho Supreme Court held that an award under I.C. § 12–120(3) is justified only if the "commercial transaction comprises the gravamen of the lawsuit." *Brower*, 117 Idaho at 784, 792 P.2d at 349. The commercial transaction must be "integral to the claim" and constitute "the basis upon which

the party is attempting to recover." *Id.* Here, Tri State was attempting to recover monetary damages based upon an alleged breach of the joint venture agreement by Roberts. Since this is a "commercial transaction," and Roberts is the prevailing party, he is also entitled to reasonable attorney's fees, both in the trial court and on appeal. I.C. § 12–120(3); I.A.R. 41; *Lawrence v. Jones*, 124 Idaho 748, 752, 864 P.2d 194, 198 (Ct.App.1993).

### III. CONCLUSION

We conclude that given the state of the pleadings and evidence presented to the district court, the Roberts were entitled to summary judgment as a matter of law. Accordingly, we affirm the order of the district court granting summary judgment and dismissal of Tri State's complaint on the merits. Costs and attorneys fees on appeal are awarded to Roberts.

LANSING, C.J., and BENGTSON, J. Pro Tem., concur.

---

**2.** We further note although the listing contract was not set to expire until October 5, 1994, there was a clause in it which stated: "This agreement is a part of that Joint Venture Agreement between Roberts & TRI–STATE LAND CO., dated May 28, 1992." The listing contract was therefore subject to the same conditions (annexation and P.U.D. approval) as the joint venture agreement. Tri State *conceded* at oral argument that these conditions would have to be complied with by October 5, 1994. There is no evidence in the record to support a plausible contention that annexation and P.U.D. approval could be accomplished by that date. In view of Tri State's failure to accomplish the necessary preconditions of the joint venture agreement, we must agree with Roberts' contention (which stands uncontroverted in the record) that it would have been impossible for these conditions to have been completed by October 5. In his affidavit, Roberts stated that certain principals at Tri State told him that a "Planned Unit Development in any form would not be approved by the City of Post Falls Planning and Zoning Commission." Plus, as noted previously, the property had not been annexed, Tri State never completed an annexation agreement with the city, Tri State's P.U.D. proposal was denied and never appealed, and no new P.U.D. proposal was resubmitted in the interim.