152 P.3d 594

**Mike BLIMKA, Plaintiff–Respondent,**

v.

**MY WEB WHOLESALER, LLC., a Maine Limited Liability Company, and Lisa De Palma, Defendants–Appellants.**

No. 32185.

Supreme Court of Idaho, Boise, October 2006 Term.

Jan. 29, 2007.

Bosch, Daw & Ballard, Chartered, Boise, for appellants. Les Bock argued.

Campbell & Walterscheid, LLP, Boise, for respondent. Matthew C. Campbell argued.

JONES, Justice.

This case concerns the exercise of personal jurisdiction by an Idaho court over non-resident defendants—a small Maine-based company and its manager—who utilized the internet to advertise and conduct business on a national scale. Mike Blimka, an Idaho resident, entered into an agreement with My Web Wholesalers, LLC ("My Web"), located in Maine, for a wholesale purchase of jeans. A dispute arose between the parties and Blimka initiated this action in Idaho. The district court found that it had personal jurisdiction over the defendants. We affirm.

## I.

My Web was a limited liability company formed under the laws of Maine and headquartered in Athens, Maine, its sole place of business. It engaged in the selling of salvaged and distressed merchandise at wholesale. My Web maintained a website that provided information about the company and an automated "listserv" that periodically distributed emails containing My Web's offerings to its subscribers. My Web did not actively solicit customers; instead, customers learned of the company through searching the internet, seeing an advertisement in a national publication, or by word of mouth.

Blimka discovered My Web via the internet and subscribed to its listserv, whereby he received an email containing an offer for the sale of jeans in bulk. Blimka contacted My Web by phone to inquire about the offer and spoke with several of My Web's employees including Lisa DePalma, a Maine resident and My Web's manager. Over the course of the conversation with DePalma, the parties arrived at a deal for purchase of the jeans. My Web subsequently sent Blimka an invoice for 26,500 units of jeans at 79 cents per unit, plus shipping, totaling $20,935.00. In response, Blimka wired the funds to My Web and the jeans were shipped to Blimka in Idaho FOB California. Blimka claims that DePalma, as well as the email sent by My Web, represented that the jeans were of a certain quality and retail value. Blimka also claims to have been told that the jeans would be wrapped and shipped in a particular way.

Blimka received sixteen bales of jeans containing approximately 1,000 pairs each. Upon inspection, Blimka believed that these jeans did not conform to what My Web and DePalma had represented. He immediately called My Web and informed DePalma that he was rejecting the goods. A dispute arose and Blimka filed suit, initially naming My Web as a defendant and later amending his complaint to add DePalma as a defendant (collectively "defendants"). Blimka's complaint alleged fraud, breach of the implied warranty of merchantability, and breach of an express warranty. Blimka properly served the defendants in Maine; however neither filed an answer or a responsive pleading. The district court issued a default judgment against the defendants, holding that the court had personal jurisdiction and

that the defendants committed fraud, breached the implied warranty of merchantability, and breached an express warranty.

The defendants subsequently filed a special appearance and an Idaho R. Civ. P. 60(b)(4) motion for relief from the judgment, claiming it was void for want of personal jurisdiction. The district court denied the motion for relief on the grounds that jurisdiction was proper. The defendants appeal.

## II.

This opinion will address three issues: (1) whether the district court's exercise of personal jurisdiction over the defendants was proper under Idaho's long-arm statute; (2) whether the district court's exercise of personal jurisdiction over the defendants was consistent with the constitutional standards of the Due Process Clause of the U.S. Constitution; and (3) whether either party is entitled to attorney fees on appeal.

"The question of the existence of personal jurisdiction over an out-of-state defendant is one of law, which this Court reviews freely." *Knutsen v. Cloud,* 142 Idaho 148, 150, 124 P.3d 1024, 1026 (2005) (quoting *McAnally v. Bonjac, Inc.,* 137 Idaho 488, 491, 50 P.3d 983, 986 (2002)). A district court's decision whether to grant relief under the provisions of Idaho Rule of Civil Procedure 60(b) is a discretionary one that will not be disturbed on appeal in the absence of an abuse of discretion. *Watson v. Navistar Int'l. Transp. Corp.,* 121 Idaho 643, 651, 827 P.2d 656, 664 (1992).

## III.

The proper exercise of personal jurisdiction over non-resident defendants by an Idaho court involves satisfying two criteria. *McAnally,* 137 Idaho at 491, 50 P.3d at 986; *St. Alphonsus Reg'l Med. Ctr. v. State of Washington,* 123 Idaho 739, 742, 852 P.2d 491, 494 (1993). First, the court must determine that the non-resident defendant's actions fall within the scope of Idaho's long-arm statute. *McAnally,* 137 Idaho at 491, 50 P.3d 983. Second, the court must determine that exercising jurisdiction over the non-resident defendant comports with the constitu-

tional standards of the Due Process Clause of the U.S. Constitution. *Id.*

The district court held that its exercise of personal jurisdiction over the defendants was proper under Idaho's long-arm statute, Idaho Code § 5–514, which provides for the exercise of jurisdiction over claims arising out of a defendant's contacts with Idaho. *Western States Equip. Co., v. American Amex, Inc.,* 125 Idaho 155, 158, 868 P.2d 483, 486 (1994). Blimka argues that the district court properly exercised personal jurisdiction over the defendants with respect to the fraud claim pursuant to Idaho Code § 5–514(b), and with respect to the contract claims pursuant to Idaho Code § 5–514(a). Since we conclude that jurisdiction existed on the fraud claim, both with respect to My Web and DePalma, and because that claim supports all relief granted in the judgment, we need not address the issue of jurisdiction over the contract claims.

## A.

Idaho's long-arm statute extends jurisdiction to "[t]he commission of a tortious act within this state." I.C. § 5–514(b). This Court has held that "an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5–514(b)." *St. Alphonsus Reg'l Med. Ctr.,* 123 Idaho at 743, 852 P.2d at 495. This is remedial legislation designed to provide a forum for Idaho residents and should be liberally construed to effectuate that purpose. *Id.* Blimka alleges that the defendants committed the tort of fraud in Idaho by intentionally misrepresenting various aspects of the jeans and that he relied on those misrepresentations to his detriment. In response, the defendants cite *Akichika v. Kelleher,* 96 Idaho 930, 539 P.2d 283 (1975) in support of their argument that they did not commit a tortious act in Idaho because, at all times relevant to this suit, they were never physically present in Idaho and could not have acted within the state. This argument is unavailing.

*Akichika* involved an Idaho resident who bought a truck from an Oregon resident. The buyer brought suit for damages in Ida-

ho, claiming that the seller had misrepresented the truck. 96 Idaho at 931, 539 P.2d at 284. Although the buyer learned about the truck in Idaho and conversed by telephone from Idaho with the Oregon seller, the buyer traveled to Oregon to inspect the truck, purchased and took delivery of it there, and only learned of the problems allegedly constituting the fraud when it broke down in Oregon on the way back to Idaho. *Id.* at 932, 539 P.2d at 285. This Court held that jurisdiction did not exist under either I.C. § 5–514(a), since the seller was not transacting business in the State of Idaho, or I.C. § 5–514(b), because the alleged tortious act did not occur in Idaho. *Id.* at 933, 539 P.2d at 286.

While this case presents some similarities to *Akichika,* there are also differences, primarily with regard to the question of where the injury actually occurred. Blimka learned of the jeans through an internet contact with the defendants and discussed the attributes of the jeans through means of email and telephone contacts. Blimka alleges that the defendants directed misrepresentations to him in Idaho via electronic means and that he sustained injury when he took delivery of the jeans in Idaho, only then learning that they had been misrepresented.

After *Akichika* was decided, the U.S. Supreme Court issued two decisions wherein it placed substantial emphasis on providing a forum in a state where the victim suffers injury from tortious action directed toward that state. In *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) the Court held New Hampshire courts had jurisdiction over a libel action against an out-of-state defendant where injury was sustained by the victim within that state. The Court noted that "New Hampshire has a significant interest in redressing injuries that actually occur within the State." *Id.* at 776, 104 S.Ct. 1473. Similarly, in *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–88, 79 L.Ed.2d 804, 812–13 (1984), the Court held California courts could entertain a libel action against out-of-state defendants, where the tortious activity was directed at a California resident and the injury was felt within that state.

In this case, the allegedly fraudulent representations were directed at an Idaho resident and the injury occurred in this state. Thus, we hold that Blimka's allegation of fraud was sufficient to invoke the tortious acts language of Idaho Code § 5–514(b) with respect to both defendants.

**B.**

Next, the defendants contend that their contacts with Idaho were insufficient under the Due Process Clause of the U.S. Constitution to permit personal jurisdiction in this case. The Fourteenth Amendment to the U.S. Constitution permits a state to exercise personal jurisdiction over a non-resident defendant when that defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101–02 (1945). In determining the existence of minimum contacts, a court must focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683, 697–98 (1977). Once a court finds the requisite minimum contacts, it must then proceed to determine whether its assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985).

In this case, the district court found that minimum contacts existed and that the court's exercise of personal jurisdiction over the defendants comported with fair play and substantial justice. Blimka argues that the district court properly exercised personal jurisdiction over the defendants.

Blimka's complaint alleged that the defendants committed the intentional tort of fraud. In the *Calder* case, the U.S. Supreme Court distinguished "untargeted negligence" from intentional, and allegedly tortious, acts expressly aimed at the forum, and adopted an "effects" test to address what contacts are necessary to satisfy minimum contacts in the context of an intentional tort expressly aimed

at the forum state. There, the plaintiff, a California resident, alleged that Florida defendants committed the intentional tort of libel by circulating a libelous story they knew would injure the plaintiff. 465 U.S. at 784–85, 104 S.Ct. at 1484–85, 79 L.Ed.2d at 809–10. The Court held that minimum contacts were satisfied where the defendants allegedly committed the intentional tort of libel outside of the forum state, but the effects of the tort were directed to, and suffered in, the forum state. *Id.* at 789, 104 S.Ct. at 1486–87, 79 L.Ed.2d at 812.

■ Like the defendants in *Calder,* the defendants in this case were not charged with mere "untargeted negligence." Rather, they were charged with the commission of a fraud in Idaho. Blimka alleged that the defendants intentionally misrepresented facts regarding the quality, value, and packaging of the jeans during telephonic and electronic communications. At all times during the communications, the defendants knew that Blimka was residing in Idaho. Therefore, like the defendants in *Calder,* "their intentional, and allegedly tortious, actions were expressly aimed" at Idaho, and they realized that the brunt of the injury resulting from these actions would occur in Idaho. *Id.* at 789–790, 104 S.Ct. at 1486–88, 79 L.Ed.2d at 812–13. Where an Idaho resident alleges that a defendant in Maine intentionally directed false representations to, and caused injury in Idaho, that resident need not travel to Maine to pursue his or her claim against the perpetrator of the fraud. *See id.* The defendants' actions satisfy minimum contacts with respect to the fraud allegations.

Additionally, because the defendants purposefully directed their allegedly false representations into Idaho, the exercise of personal jurisdiction is presumed not to offend traditional notions of fair play and substantial justice. *See, e.g., Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1260 (9th Cir.1989). Idaho has an ever-increasing interest in protecting its residents from fraud committed on them from afar by electronic means. Given the facts, the defendants should have reasonably anticipated being haled into Idaho courts. Because Blimka alleges that both My Web and De-

Palma committed fraud, we hold that the district court's exercise of personal jurisdiction over the defendants with respect to the fraud claim comported with constitutional standards.

### C.

In sum, neither the Idaho long-arm statute nor the Due Process Clause precluded the district court from exercising personal jurisdiction over the defendants and entering a binding judgment against them in this case. As a result, the district court's decision to deny the defendants' motion for relief from judgment was not an abuse of that court's discretion and will not be disturbed by this Court.

### IV.

■ Both parties requests attorney fees on appeal pursuant to Idaho Code § 12–120(3), which compels an award attorney fees to the prevailing party in any civil action to recover "in any commercial transaction." Commercial transaction has been defined as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). An award of attorney fees under Idaho Code § 12–120(3) is proper if "the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Brower v. E.I. DuPont De Nemours and Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

■ A transaction involving the sale of 26,500 pairs of jeans is not made for personal or household purposes. Rather, it is a business or commercial transaction, as Blimka obviously intended to market the jeans rather than wear them. From time to time the Court has denied fees under I.C. § 12–120(3) on the commercial transaction ground either because the claim sounded in tort or because no contract was involved. The commercial transaction ground in I.C. § 12–120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct (*see Lettunich v. Key Bank Nat'l Ass'n,* 141 Idaho 362, 369, 109 P.3d 1104, 1111 (2005)), nor does it require that there be a contract. Any previous holdings to the contrary are

overruled. We hold that Blimka is entitled to a fee award on appeal with respect to his fraud claim, as he is seeking recovery of damages sustained as a result of the commercial transaction involved in this case.

### V.

We hold that the acts of the defendants were sufficient to subject them to the jurisdiction of the Idaho courts for the purpose of this litigation. The decision of the district court is affirmed. Blimka is awarded attorney fees and costs on appeal.

Chief Justice SCHROEDER, and Justices TROUT and BURDICK concur.

Justice EISMANN specially concurring.

I concur in the majority opinion except with respect to its attempt to distinguish *Akichika v. Kelleher*, 96 Idaho 930, 539 P.2d 283 (1975), from this case. In my opinion, *Akichika* is not distinguishable and should be overruled insofar as it held that there was no long-arm jurisdiction based upon the commission of a tort in Idaho.

The majority seeks to distinguish *Akichika* from this case based upon where the injury occurred. According to the majority, Blimka "sustained injury when he took delivery of the jeans in Idaho, only then learning that they had been misrepresented." The majority points out that Akichika took delivery of the pickup truck in Oregon and learned he had been defrauded when it broke down while he was driving back to Idaho. I cannot agree with the majority's analysis because it confuses the injury caused by the fraud with the discovery of the fraud. The majority is also mistaken as to where Blimka took delivery. The jeans were sold F.O.B. California, which means that Blimka took delivery in California. I.C. §§ 28–2–301; 28–2–319(1)(a); 28–2–401(2)(a); 28–2–503(2); & 28–2–504(a). He was responsible for transporting the jeans to Idaho, he bore the risk of loss once they left the point of shipment in California, and he paid the cost of shipping them.

Akichika suffered injury when he paid $1,000 for the misrepresented truck, not when he later learned he had been defrauded after the truck broke down on his way back to Idaho. The money was taken out of his checking account in Homedale, Idaho. Likewise, Blimka suffered injury when he wired $21,000 to My Web Wholesaler, LLC, not when he later received the jeans and learned he had been defrauded. Blimka wants his money back from the defendants, not another shipment of jeans. Although learning of the fraud may injure one's sense of justice, that injury is not compensable. It is the injury to one's pocketbook that is compensable.

In both this case and *Akichika*, the fraudulent misrepresentations to induce the buyers to part with their money were made over the telephone by out-of-state sellers who were knowingly talking to prospective buyers located in Idaho. In both cases, the items being sold were existing goods. In both cases, the misrepresentations concerned the characteristics of those goods. In both cases the sellers misrepresented the goods in order to induce Idaho residents to purchase them. In both cases, the Idaho residents relied upon the misrepresentations and parted with money in order to obtain the goods. The only difference is that in *Akichika* the check representing the down payment was personally delivered to the out-of-state seller while in this case the payment was wired to the out-of-state seller. In my opinion, it does not matter whether the buyer thereafter physically delivered payment to the seller, mailed payment to the seller, or wired payment to the seller, the injury occurred in Idaho, and an Idaho court has jurisdiction.

The majority holds that there is long-arm jurisdiction in this case because: (1) "[a]t all times during the communications, the defendants knew that Blimka was residing in Idaho" and therefore " 'their intentional, and allegedly tortious, actions were expressly aimed' at Idaho"; (2) the defendants "realized that the brunt of the injury resulting from these actions would occur in Idaho"; and (3) "because the defendants purposefully directed their allegedly false representations into Idaho, the exercise of personal jurisdiction is presumed not to offend traditional notions of fair play and substantial justice." Those three factors also apply to the facts in *Akichika*.

The seller's intentional and tortious actions were expressly aimed at Idaho because the seller in *Akichika* made the fraudulent mis-reprentations during a telephone call with a prospective purchaser he knew was in Idaho. Likewise, the seller in *Akichika* knew that the brunt of the injury resulting from the transaction would occur in Idaho. The down payment was drawn on a bank located in Idaho, and the balance of the payment was to be made at that bank. Finally, in *Akichika,* just as in this case, "because the defendants purposefully directed their allegedly false representations into Idaho, the exercise of personal jurisdiction is presumed not to offend traditional notions of fair play and substantial justice."

*Akichika* and this case are indistinguishable based upon an analysis of the relevant facts and law. By failing to overrule it, we simply create confusion as to the applicable law.