# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37026

| | | |
|---|---|---|
| JOSE MANUEL CARRILLO, as an individual and as natural parent and guardian of NAYELI CARRILLO, a minor child; as personal representative of the ESTATE OF MARISELA LYCAN, | ) ) ) ) ) | Coeur d'Alene, September 2011 Term |
| | ) | 2012 Opinion No. 62 |
| Plaintiff-Respondent-Cross Appellant, | ) ) | Filed: April 13, 2012 |
| v. | ) ) | Stephen Kenyon, Clerk |
| BOISE TIRE COMPANY, INC., an Idaho corporation, | ) ) ) ) | SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED MARCH 1, 2012 IS HEREBY WITHDRAWN. |
| Defendant-Appellant-Cross Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

The district court's denial of Boise Tire's motion for new trial is affirmed. The judgment as to Jose Carrillo's personal injury award is vacated and the case is remanded for proceedings consistent with this Opinion.

Brady Law, Chartered, Boise, for appellant. Michael G. Brady argued.

Korminik, Hallam & Sneed, Meridian and Guenin Law Office, P.C., Wabash, Indiana, for respondents. Mark C. Guenin and Thomas G. Hallam argued.

_____

HORTON, Justice.

Jose and Nayeli Carrillo, father and daughter, sued Boise Tire Co. (Boise Tire), alleging that Boise Tire improperly performed a tire rotation on their vehicle and that as a result, the Carrillos and Marisela Lycan, Jose's partner and Nayeli's mother, were in a motor vehicle accident. Marisela was killed, Jose was injured, and eighteen-month old Nayeli underwent testing that revealed no physical injury. A jury found that Boise Tire's conduct was reckless. Boise Tire moved for new trial on the grounds that (1) the Carrillos' pleadings merely alleged negligence and therefore the court committed legal error by permitting the Carrillos to argue that Boise Tire's conduct was reckless, (2) the jury verdict was excessive and the result of

1

passion or prejudice, and (3) the jury verdict was not supported by sufficient evidence. The district court issued a remittitur as to Nayeli's noneconomic damage award but otherwise denied the motion. Boise Tire appeals that denial as well as the court's holding that I.C. § 6-1606 did not require the Carrillos' damage awards to be reduced by the subrogation interest transferred from the Carrillos' insurer to their attorney, nor by social security benefits obtained by the Carrillos. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jose Carrillo and Marisela Lycan were cohabiting partners who had a child together. In preparation for a trip, Marisela took their vehicle to be serviced by Boise Tire on March 30, 2007. Boise Tire rotated and inspected the vehicle's tires. The next day, Jose, Marisela, and their eighteen-month old daughter Nayeli set out on the trip. On April 1, 2007, when Jose was driving at highway speed, the right rear wheel separated from the vehicle without warning. Jose lost control and the vehicle rolled. Marisela had removed her seatbelt to check on Nayeli and was killed when she was thrown from the vehicle. At the hospital, Nayeli underwent a series of tests that revealed no physical injury. Jose almost immediately underwent surgery to address injuries to his arm, shoulder, neck, and upper back. Jose testified he had to undergo rotator cuff surgery a year after the accident due to ongoing problems with his shoulder. At trial, he continued to have pain and limited mobility.

The Carrillos filed suit against Boise Tire on October 16, 2007. The complaint alleged negligence, negligent infliction of emotional distress, and wrongful death. As discovery progressed, Boise Tire filed motions in limine regarding several types of evidence, including a motion to exclude evidence that the conduct of Shane Mendenhall, the Boise Tire employee who had serviced the Carrillos' vehicle, had been intentional, willful, or reckless. Boise Tire argued that "[n]owhere in the Complaint is it factually alleged that Boise Tire engaged in any intentional, willful or reckless misconduct . . . , and nowhere in the Complaint is any cause of action alleged based on intentional, willful or reckless misconduct." Boise Tire asserted that in the absence of such allegations, Boise Tire was deprived of notice that it faced liability in excess of the cap on noneconomic damages imposed by I.C. § 6-1603. Boise Tire stated that it "w[ould] not, by express or implied consent, try any issues regarding any alleged intentional,

2

willful or reckless misconduct . . . ." The trial court denied Boise Tire's motion, and the case proceeded to trial.

Several experts testified at trial. Dr. Alan Johnson testified as a metallurgy and accident reconstruction expert on behalf of the Carrillos. Johnson believed that the lug studs broke at Boise Tire, leaving a visible remnant in Mendenhall's socket that he would have had to knowingly remove in order to complete his work. Johnson acknowledged that this may have happened because the studs may have been made from poor quality steel. Jerry Ogden, a forensic engineer and accident reconstructionist, also testified on the Carrillos' behalf. Ogden testified that the accident happened suddenly and without warning. Ogden also testified that the three wheels that remained attached each had three lug studs with nuts affixed by torque in excess of the maximum appropriate level, and that the broken studs fractured at the first thread. Ogden considered these findings consistent with his conclusion that the lug nuts affixed to the studs of the failed wheel had been overtightened. Scott Kimbrough, a failure analyst and accident reconstructionist, testified on behalf of Boise Tire. Kimbrough believed that at least two of the three studs that Johnson alleged were broken and removed by Boise Tire were in fact present when the accident occurred. He testified that the lug nuts were not overtightened, but failed because the studs were made of poor steel.

There was also trial testimony regarding Nayeli's condition before and after the accident. Prior to the accident, Jose's older daughters Felida and Nelida cared for Nayeli while her parents worked. Felida testified that Nayeli had been "[j]ust like any toddler, she talked, she walked, she ate, drank. She was a little kid. She was pretty good." Nelida described Nayeli before the accident as "full of life. She loved to play a lot with the kids. She enjoyed, you know, being around my kids. She enjoyed when her mom would get home, and it was just like, oh, she would just jump up and down, and she was really happy." Nayeli was also beginning to put sentences together.

After the accident, Nayeli returned to Idaho with Nelida while Jose underwent surgery and recuperated for about a week. Nelida testified that while she cared for Nayeli:

> . . . [Nayeli] would scream and cry because she wanted light. . . . . she wouldn't even talk to me. I would try feeding her. She didn't want to eat. She wouldn't even ask me any questions.
>
> Normally she would have been about like, "Where's poppy?" "Where's mommy?" You know, she didn't ask. I think she was just really confused.

3

When Jose returned home, Felida moved in with Jose and Nayeli in order to provide full time care. Felida testified that Nayeli "changed automatically. Like when we saw her at the hospital, she didn't even acknowledge us at all. She was just like being really mopey, like she just laid there, like she had no idea what she had just gone through." Nayeli would not eat or drink. While the three lived together, Felida noticed that Nayeli:

> . . . was different. She didn't talk much. She wasn't starting to talk. She didn't say much to nobody anymore. It was kind of hard to get her to talk for a little bit.
> And then like her first time, when she came home, like the first week, I noticed, I don't know – I didn't know if she was having nightmares or whatnot, but she was waking up at night just like crying and screaming, and I don't know if she remembers there was a car wreck, but she would cry for her mom. And then after that, even now she doesn't a [sic] talk much. She doesn't say much.

Although Nayeli had been potty trained and occasionally used pull-ups prior to the accident, two years later she remained in diapers.

Trial testimony also addressed Jose's injuries. Dr. Kenneth Little testified as to Jose's cervical fractures and surgery immediately following the accident. Dr. Little saw Jose over the course of one year, at the end of which Jose continued to present some symptoms, some of which the doctor would expect to be "ongoing continually." Dr. Little completed a disability form for Jose on May 2, 2007, because Jose was not ready to return to work. Jose last visited Dr. Little on April 16, 2008. Dr. Little acknowledged that, at the time of trial, he was not familiar with Jose's condition or his ability to return to work.

Jose testified that he cannot sit still because of back pain and that he has limited range of motion, weakness, pain, and numbness in portions of his left shoulder, arm, and hand. Jose also testified that after the accident he suffered headaches and had trouble sleeping. Jose has not returned to work, and has been assessed as permanently disabled by the Social Security Administration.

After the close of testimony, the court instructed the jury that:

> If you decide that Boise Tire was negligent and did not perform the duty it owed to the plaintiffs with reasonable care, you must then determine if the negligence arose out of willful or reckless misconduct. The words "willful or reckless" when used in these instructions and when applied to the allegations in this case, mean more than ordinary negligence. The words mean intentional or reckless actions, taken under circumstances where the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result.

4

The jury returned a verdict in favor of the Carrillos, selecting "yes" in response to the verdict form's question whether "Boise Tire Company's negligence which was a proximate cause of Plaintiffs' injuries [was] willful or reckless." The jury awarded Jose $401,950 in economic damages and $688,128 in noneconomic damages for his personal injury claim. The jury awarded Nayeli $43,122 in economic and $1,000,000 in noneconomic damages for her personal injury claim. The jury also awarded $366,800 in economic and $1,000,000 in noneconomic damages on the Carrillos' wrongful death claim.

The court entered judgment on the jury's special verdict. Boise Tire moved for a new trial or remittitur on several grounds. Boise Tire alleged that (1) the jury awards were excessive and appeared to have been given under the influence of passion or prejudice, (2) the evidence was insufficient to justify the verdict, and (3) the verdict was in error because the Carrillos' failure to plead recklessness should have prevented them from arguing it to the jury. Boise Tire also moved to reduce the jury award pursuant to I.C. § 6-1606. The affidavit in support of that motion asserted that the Carrillos' awards must be reduced by Jose's social security disability benefits and Nayeli's social security survivor benefits. Boise Tire also asserted that the award must be set off because the Carrillos' insurer entered into an agreement with the Carrillos' attorneys under which it agreed to compensate counsel by reducing its subrogation claim by one-third.

For the most part, the trial court denied the motions. However, the court partially granted Boise Tire's request for remittitur, reducing Nayeli's recovery for noneconomic damages to $250,000 on her personal injury claim, determining that "in light of [her] lack of long-lasting physical injuries," the jury's $1,000,000 award was excessive. The trial court denied the Carrillos' requests for attorney fees, holding that I.C. § 12-120(3) did not apply because the transaction at issue was not commercial and that I.C. § 12-121 did not apply because Boise Tire's defense was not frivolous. Boise Tire timely appealed and the Carrillos have cross-appealed the district court's denial of their requested attorney fees.

## II. STANDARD OF REVIEW

We review a trial court's determinations regarding motions for new trial and attorney fees for abuse of discretion. *Bybee v. Isaac*, 145 Idaho 251, 255, 178 P.3d 616, 620 (2008); *Shore v. Peterson*, 146 Idaho 903, 915, 204 P.3d 1114, 1126 (2009). We assess whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer

boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc. v. Tex. Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004). Only an error which affects a party's substantial rights is grounds for new trial. I.R.C.P. 61; *Schmechel v. Dillé*, 148 Idaho 176, 180, 219 P.3d 1192, 1196 (2009); *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 575, 903 P.2d 730, 740 (1995).

Statutory interpretation is a question of law over which this Court exercises free review. *Dyet v. McKinley*, 139 Idaho 526, 529, 81 P.3d 1236, 1239 (2003).

## III. ANALYSIS

**A. The district court did not abuse its discretion in denying the motion for new trial.**

If a trial court determines that (1) the damages awarded are excessive and appear to be the result of passion or prejudice, (2) the evidence is insufficient to justify the verdict, or (3) legal error occurred at trial, the court in its discretion may grant a new trial. I.R.C.P. 59(a). This Court "is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in granting or refusing to grant a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused." *Dinneen v. Finch*, 100 Idaho 620, 626, 603 P.2d 575, 581 (1979).

Boise Tire contends on appeal that the trial court abused its discretion because each of the three listed rationales existed for granting a new trial. The district court acknowledged that the decision to grant or deny Boise Tire's motion for new trial was committed to the court's discretion. Thus, the focus of this Court's review is whether the trial court acted within the bounds of its discretion and consistently with the applicable legal standards, and in so doing exercised reason. *Sun Valley Potato Growers, Inc.*, 139 Idaho at 765, 86 P.3d at 479.

1. The district court did not abuse its discretion when it determined that sufficient evidence supported the jury verdict and that the verdict was not the result of passion or prejudice.

Two of Boise Tire's grounds for new trial required the district court to make an independent assessment of the facts[1] and thereafter examine the relationship between those facts and the jury verdict.

---

[1] Appellate review of a trial court's fact findings is necessarily limited, as "[t]he trial court is in a far better position to weigh the demeanor, credibility and testimony of witnesses, and the persuasiveness of all the evidence. . . . While we must review the evidence, we are not in a position to 'weigh' it as the trial court can." *Quick v. Crane*, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986) (citing *Dinneen*, 100 Idaho at 626, 603 P.2d at 581). This Court

> There is a qualitative difference between a trial judge's role in deciding whether a new trial is justified based on the insufficiency of the evidence under Rule 59(a)(6), and whether a new trial is justified based on the amount of the jury's award of damages under Rule 59(a)(5). . . . Under Rule 59(a)(5), the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. Under Rule 59(a)(6), the trial judge must weigh the evidence and determine (1) whether the verdict is against his or her view of the clear weight of the evidence; and (2) whether a new trial would produce a different result.

*Harger v. Teton Springs Golf & Casting, LLC*, 145 Idaho 716, 718-19, 184 P.3d 841, 843-44 (2008) (quotations omitted) (emphasis original). Thus, to determine whether the trial court abused its discretion, we must assess whether it properly examined the relationship between its own findings of fact and the jury verdict through the unique lenses of Rule 59(a)(5) and 59(a)(6).

  a.  *I.R.C.P 59(a)(5)*

An I.R.C.P. 59(a)(5) motion for new trial requires the court to determine whether there is a disparity between the award actually assessed by the jury and the award the court itself would have assessed based upon its independent findings of fact. *Dinneen*, 100 Idaho at 625, 603 P.2d at 580. If the court determines there is a disparity between the two, so substantial that it appears the jury's award was given under the influence of passion or prejudice, the court in its discretion may grant a new trial. *Id.* at 625-26, 603 P.2d at 580-81.

In the present case, the court denied Boise Tire's motion for new trial as to all of Jose's damages and as to Nayeli's economic damages. However, the court determined there was a significant disparity between the award it deemed appropriate to compensate its assessment of Nayeli's noneconomic damages and the jury's $1,000,000 noneconomic damages award.

> I do disagree to some extent with the jury on the noneconomic damages portion of her personal injury award in that $1,000,000 does seem excessive to me in light of the lack of long-lasting physical injuries although the trauma of the accident itself on such a young child was substantial. My personal assessment of noneconomic damages for Nayeli was more in the range of $250,000. Because

---

will not disturb the trial court's factual findings if those findings are supported by substantial evidence. *Belstler v. Sheler,* 151 Idaho 819, ___, 264 P.3d 926, 930 (2011).

7

there is a substantial disparity that the Court [sic] will grant a remittitur[2] or a new trial solely on the issue of Nayeli's noneconomic damages.

Boise Tire contends that where emotional distress is caused by merely negligent conduct, such distress is only compensable if there is proof of physical injury or manifestation of the emotional distress, and that the district court here erred because the record lacked sufficient proof that Nayeli experienced any physical manifestation of emotional distress. We affirm the district court's denial of the motion for new trial, conditioned upon the Carrillos' acceptance of a reduced noneconomic damage award on Nayeli's claim. We hold that, in the instance of a young child, lacking the capacity to verbalize regarding physical manifestations of emotional distress, the exposure to a negligently, inflicted violent contact, such as a car accident, coupled with evidence demonstrating emotional distress, is sufficient evidence to support an award of noneconomic damages.

Due to the risk of fraudulent claims, the difficulty of proving causation, and the belief that some degree of emotional distress is a foreseeable fact of everyday life, courts have long conditioned recovery for emotional distress on plaintiffs' ability to offer tangible proof of emotional distress. *See Hatfield v. Max Rouse & Sons NW*, 100 Idaho 840, 851, 606 P.2d 944, 955 (1980) (overruled on other grounds by *Brown v. Fritz*, 108 Idaho 357, 359-60, 699 P.2d 1371, 1373-74 (1985)); *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986). Thus, this Court held over forty years ago that a plaintiff who alleges emotional trauma as the result of another's negligence must demonstrate that she has physically manifested the distress. *Summers v. W. Idaho Potato Processing Co.*, 94 Idaho 1, 2, 479 P.2d 292, 293 (1970). Our previous decisions recognize that there may be circumstances in which proof of a negligently inflicted physical impact is sufficient to support an award for resulting emotional distress. *Hatfield*, 100 Idaho at 851, 606 P.2d at 955) (characterizing *Summers* as holding that there is no right of recovery "for emotional distress in the absence of *physical causes or* manifestations . . . .") (emphasis added)). Given that eighteen-month old Nayeli was involved in a violent car accident during which the vehicle she was in rolled at high speed, resulting in serious injuries to her father and her

---

[2] "[T]he trial court may condition the denial of a motion for a new trial upon the filing by the plaintiff of a remittitur of the jury's damage award by a stated amount. The plaintiff is given the choice of either submitting to a new trial or of accepting the damage amount that the trial court considers justified." *Quick*, 111 Idaho at 770, 727 P.2d at 1198 (citing Wright & Miller, 9 Federal Practice & Procedure § 2815 at 100 (1971 & Supp. 1985)).

mother's death, we hold that the experience of the car accident itself was a sufficient physical cause as to support a finding of negligent infliction of emotional distress.

Although multiple medical tests immediately after the accident revealed that Nayeli had not suffered an identifiable physical injury, there is evidence in the record to support the district court's finding that Nayeli displayed physical manifestations of emotional trauma.[3] This Court has recognized physical manifestations of emotional distress as including sleep disorders, headaches, stomach pains, suicidal thoughts, fatigue, loss of appetite, irritability, anxiety, reduced libido and being "shaky-voiced." *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 837, 801 P.2d 37, 44 (1990); *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989); *Cook v. Skyline Corp.*, 135 Idaho 26, 35, 13 P.3d 857, 866 (2000). Here, the trial court found that following the accident, Nayeli regressed in development, appeared withdrawn, and suffered nightmares. Under our precedent, these physical manifestations are sufficient to support recovery for negligent infliction of emotional distress.

Since the trial court compared its own hypothetical damages award to the jury's actual award, reduced Nayeli's noneconomic damage, and otherwise affirmed the jury's valuation of the plaintiffs' damages based on the facts as found by the court, the court acted within the bounds of its discretion, consistently with applicable legal standards, and reached its decision by the exercise of reason. Thus, we hold that the district court's denial of Boise Tire's I.R.C.P. 59(a)(5) motion for new trial was not an abuse of discretion.

   b. *I.R.C.P 59(a)(6)*

Nor did the district court abuse its discretion when it denied Boise Tire's I.R.C.P. 59(a)(6) motion for new trial because it determined that the jury verdict was supported by the weight of the evidence. A grant of new trial under I.R.C.P. 59(a)(6) is appropriate if the court determines that the evidence is insufficient to justify the jury's verdict. The trial court must "determine (1) whether the verdict is against his or her view of the clear weight of the evidence; and (2) whether a new trial would produce a different result." *Schwan's Sales Enters., Inc. v. Idaho Transp. Dep't*, 142 Idaho 826, 833, 136 P.3d 297, 304 (2006).

---

[3] Boise Tire contends that the record lacks sufficient evidence in this regard because lay testimony is not competent to establish that a child has developmentally regressed. We disagree. So long as a lay witness does not testify on the basis of specialized knowledge, his opinions or inferences are admissible testimony if they are rationally based on his own perceptions and helpful to the trier of fact. I.R.E. 701. Here, each of Nayeli's family members testified that Nayeli's behaviors changed for the worse immediately following the accident. The ability to observe a young family member's progress from infant to child is not outside of the usual and ordinary experience of the average person, and the district court did not err in its reliance upon the observances of family members.

9

Here, both the district court and the jury found that the Carrillos' injuries were the result of Mendenhall's negligent conduct. Although there was conflicting testimony, the trial court's finding that the lug studs were broken before the Carrillos' vehicle left Boise Tire is supported by the trial testimony of engineering and metallurgy experts. Likewise, the record contains substantial evidence to support the trial court's findings that Jose is permanently impaired and that Nayeli is entitled to a wrongful death award. Since the district court's findings of fact align with those of the jury and are supported by substantial, competent evidence, the district court did not abuse its discretion when it found that the jury's verdict was in line with the clear weight of the evidence. We therefore hold that the district court properly exercised its discretion when it denied Boise Tire's request for new trial under I.R.C.P. 59(a)(6).

2. <u>The district court did not commit legal error when it permitted the jury to consider whether Boise Tire's conduct was reckless.</u>

Boise Tire argues that because the Carrillos never amended their pleadings to allege reckless or willful misconduct, calling into question the applicability of the I.C. § 6-1603 cap on noneconomic damages, the trial court committed legal error. Idaho Code § 6-1603(1) caps the amount of noneconomic damages that a claimant may receive for actions in negligence. However, the damages cap does not apply to: (1) "[c]auses of action arising out of willful or reckless misconduct," or (2) "[c]auses of action arising out of an act or acts which the trier of fact finds beyond a reasonable doubt would constitute a felony under state or federal law." I.C. § 6-1603(4). Boise Tire contends that in order to avoid the damages cap, the Carrillos were required to expressly plead reckless misconduct because it is a cause of action distinct from negligence. The trial court held that reckless or willful misconduct is simply a degree of negligence and that the Carrillos' allegation of negligence therefore provided sufficient notice that the I.C. § 6-1603 limitation may not apply.

We affirm the trial court and hold that willful or reckless misconduct is a form of negligence that involves both intentional conduct and knowledge of a substantial risk of harm.

> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence

10

> which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.

*State v. Papse*, 83 Idaho 358, 362-63, 362 P.2d 1083, 1086 (1961) (quoting Restatement (First) of Torts § 500 cmt. g (1934)).  Thus, where liability is disputed, an allegation of negligence is sufficient to put a defendant on notice that its liability will not be statutorily capped if its conduct is found to have arisen to the degree of recklessness.

The liberal standards of notice pleading support our conclusion.  The Idaho Rules of Civil Procedure set forth a system of notice pleading intended to free litigants from what were once rigid pleading requirements.  *Cook*, 135 Idaho at 33, 13 P.3d at 864.

> The general policy behind the current rules of civil procedure is to provide every litigant with his or her day in court.  The rules are to be construed to secure a just, speedy and inexpensive determination of every action or proceeding.  The purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff bases his action.  A complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief.

*Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986) (citations omitted).  Courts should "make every intendment to sustain" a complaint that contains a "concise statement of the facts constituting the cause of action and a demand for relief."  *Gibson v. Ada Cnty. Sheriff's Dep't*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003).  In some instances, heightened pleading requirements are imposed by rule or statute.  Thus, actions sounding in fraud, mistake, or violation of civil or constitutional rights must be stated with particularity.  I.R.C.P. 9(b).  Similarly, the prayer for relief of a party that seeks punitive damages must be amended to contain a specific request for such damages.  I.C. § 6-1604(2).  We note that I.C. §§ 6-1603 and -1604 were contemporaneously enacted, providing further support for our conclusion that the Legislature did not intend plaintiffs to expressly plead recklessness in order to avoid the statutory limitation on damages.  *See Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987) ("where the legislature expressly states one thing it is deemed to have excluded another, *expressio unis est exclusio alterius* (citing *Sterling v. Bloom*, 111 Idaho 211, 224, 723 P.2d 755, 768 (1986)).  Since the Legislature required an express prayer for punitive relief yet, in order to avoid the statutory cap on damages, failed to require an express allegation of recklessness, we presume the Legislature did not intend plaintiffs to expressly plead recklessness.

11

We find that the Carrillos' complaint provided sufficient notice that Boise Tire must defend itself against a claim that its negligent conduct rose to the degree of recklessness. The complaint asserted that Boise Tire owed the Carrillos a duty of care to properly perform commissioned repairs, that Boise Tire breached that duty by improperly performing a tire rotation on the Carrillos' vehicle, resulting in wheel failure and the subsequent accident. Additionally, the Carrillos' complaint contained a negligent infliction of emotional distress claim that characterized Boise Tire's conduct as "unlawful and/or negligent."[4] As the trial court noted, "[t]he factual allegations of this case have been known for a considerable period of time. The plaintiffs have asserted throughout the course of this case that the defendant performed such a poor job in servicing their vehicle that the rear tire came off and caused it to crash the day after it was serviced." These allegations placed Boise Tire on notice that its conduct may have involved a heightened degree of negligence and that it therefore faced potential liability in excess of the statutory cap on noneconomic damages.

We note that there is no basis for Boise Tire's contention that it was not provided with ample opportunity to develop a defense, as the defenses it claims it would have raised to a reckless misconduct claim (unforeseeable harm and conduct not performed within the course and scope of employment) are identical to those appropriately raised in defense of a negligence claim. We therefore hold that the district court properly instructed the jury regarding negligence as well as reckless misconduct and did not abuse its discretion by denying Boise Tire's request for new trial.

**B. The district court erred in part when it denied Boise Tire's motion to reduce the Carrillos' damage award pursuant to I.C. § 6-1606.**

Boise Tire contends that, pursuant to Idaho's statute addressing collateral source payments, the district court should have reduced the jury award on two grounds. First, Boise Tire contends the award should be reduced because the Carrillos' insurer agreed to compensate counsel by transferring one-third of its subrogation interest in the Carrillos' recovery to the Carrillos' attorneys. Second, Boise Tire contends the award should be reduced by the amount of Jose's social security disability and Nayeli's survivor benefits. We partially affirm the

---

[4] Negligence that is the result of mere inadvertence does not result in criminal liability. Rather, "[c]riminal negligence is gross negligence, such negligence as amounts to a wanton, flagrant, or reckless disregard of consequences or wilful indifference of the safety or rights of others . . . ." *State v. Taylor*, 59 Idaho 724, 735, 87 P.2d 454, 459 (1939).

12

district court's denial of Boise Tire's motion to reduce the award, but vacate and remand to the district court to subtract Jose's social security disability benefits from his award.

The collateral source rule is a common law doctrine under which an injured party's damage award may not be reduced by payments, also intended to compensate the harm caused by the tortfeasor, received from third parties. Restatement (Second) of Torts § 920A cmt. b & d (1979). Several jurisdictions, including Idaho, have enacted statutes that abrogate the common law rule, requiring collateral source payments to be deducted from damage awards. I.C. § 6-1606; *see also* Restatement (Second) of Torts § 920A at cmt. d.

Idaho Code § 6-1606 mandates that a tortfeasor is liable only for those damages that remain after most forms of collateral source payments are taken into account.

> In any action for personal injury or property damage, a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage, whether from private, group or governmental sources, and whether contributory or noncontributory. For the purposes of this section, collateral sources shall not include benefits paid under federal programs which by law must seek subrogation, death benefits paid under life insurance contracts, benefits paid by a service corporation organized under chapter 34, title 41, Idaho Code, and benefits paid which are recoverable under subrogation rights created under Idaho law or by contract. Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources.

I.C. § 6-1606. The statute's purpose is to prevent double recovery. *Dyet v. McKinley*, 139 Idaho 526, 529, 81 P.3d 1236, 1239 (2003). The application of I.C. § 6-1606 is a question of law over which this Court exercises free review. *Id.* at 530, 81 P.3d at 1240.

1. The transfer of a subrogation interest is not a collateral source payment.

The district court properly applied I.C. § 6-1606 because the subrogation interest the Carrillos' insurer transferred to legal counsel remained a recoverable subrogation right. As I.C. § 6-1606 states, "collateral sources shall not include . . . benefits paid which are recoverable under subrogation rights created under Idaho law or by contract." We held in *Dyet* that a subrogee's enforcement or nonenforcement of its subrogation interest is irrelevant because the mere existence of a subrogation right renders benefits "recoverable" under the statute. 139 Idaho at 531, 81 P.3d at 1241. In the present case, a subrogation right existed in the Carrillos' insurer, and therefore the district court properly denied Boise Tire's request to reduce the

13

Carrillos' recovery. We note that the facts of this case are less extreme than those of the hypothetical presented in *Dyet*, where even if a subrogation right were never exercised it would not be deductible. We also note that the insurer's agreement with counsel does not alter the Carrillos' liability for medical expenses.[5] Since the insurer paid the Carrillos' medical expenses, has a contractual subrogation interest in any recovery thereof, and has not altered the value of medical expenses for which the Carrillos were obligated, we affirm the district court's application of I.C. § 6-1606.

2. The district court properly denied Boise Tire's motion to reduce the damage award by the amount of Nayeli's social security survivor benefits.

The district court refused to reduce Nayeli's damage award, analogizing social security survivor benefits to death benefits paid under a life insurance contract, which I.C. § 6-1606 expressly excludes from those collateral source payments which are deductible. We affirm the district court's holding, although on alternative grounds. Under the plain language of I.C. § 6-1606, a damages award must be reduced by the amount of collateral source payments "[i]n any action for personal injury or property damage . . . ." Nayeli is entitled to social security survivor benefits due to the wrongful death of her mother Marisela. Since the action that gave rise to the award upon which Boise Tire seeks to offset the survivor benefits is not one for personal injury or property damage, it is not governed by I.C. § 6-1606. We thus affirm the ruling of the district court in regard to Nayeli's social security survivor benefits.

3. The district court erred in denying Boise Tire's motion to reduce the damage award by the amount of Jose's past social security disability benefits.

The district court correctly concluded that benefits that are anticipated to be received by a plaintiff in the future do not fall within I.C. § 6-1606. The court held that, "[b]ased on the plain language of I.C. § 6-1606, the court may only offset the award to the extent of past payments from collateral sources." The court reached this conclusion based on *Department of Health & Welfare v. Hudelson*, 146 Idaho 439, 447, 196 P.3d 905, 913 (2008), where this Court held that applicability of I.C. § 6-1606 is limited to past benefits paid because the plain language of the statute only addresses the payment of benefits in the past tense. We reiterate that within I.C. § 6-1606, each reference to receipt of collateral source benefits is phrased in the

---

[5] Boise Tire erroneously asserts that an insurer's agreement to "reduce" its subrogation claim by transferring it to another party is analogous to Medicare write-downs, held deductible by this Court in *Dyet*, 139 Idaho at 530, 81 P.3d at 1240. The analogy is inapt because a plaintiff is not liable for the amount by which his medical bills are written down to match established Medicare rates. *Id.*

past tense. We therefore affirm the district court's holding that the statute limits deductible collateral source payments to those paid up until judgment was entered.

However, disability benefits received from governmental sources are "amounts received by the claimant from collateral sources as compensation for the personal injury . . . ." We therefore disagree with the trial court's conclusion that such benefits are not deductible collateral source payments. We vacate the judgment as to Jose's personal injury award and remand to the district court to reduce the award by the amount of Jose's social security disability benefits received at the time the court originally entered judgment.

**C. The district court did not abuse its discretion in denying the Carrillos' request for attorney fees.**

We affirm the district court's denial of the Carrillos' request for attorney fees under I.C. § 12-120(3) and I.R.C.P. 37.[6]

   1. <u>I.R.C.P. 37(c).</u>

This Court reviews a trial court's response to a request for Rule 37 sanctions for a manifest abuse of discretion. *Ashby v. W. Council, Lumber Prod'n & Indus. Workers*, 117 Idaho 684, 686, 791 P.2d 434, 436 (1990).

Idaho Rule of Civil Procedure 37(c) states:

Expenses on Failure to Admit. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

The trial court here appears to have concluded that sanctions were inappropriate because the admissions sought were not of substantial importance. At the hearing on Boise Tire's motion to reconsider, the trial court stated that "I certainly do think that there were some of the requests for admission that were denied that should have been admitted." These included the

---

[6] Boise Tire contends that the issue is moot because the Carrillos' cross-appeal was not timely filed. However, as the Carrillos note, we decided the timeliness issue with our February 25, 2010, order denying motion to dismiss their cross-appeal.

fact that Marisela was Nayeli's mother and that Jose and Marisela were common law spouses.[7] However, the court concluded that:

> I think some of these request for admission should have been admitted, but I do not – but I don't think that this – in this particular case that the admission or failure to admit necessitated any proof that was other than the proof that you would have had to have put on, had the admissions been made.
> Had it been admitted that she was the wife, say, of Jose Manuela Carrillo, the common-law wife, you would still have to put on evidence relating to some issues, and certainly as to whether she was – let me get specific – the mother of Nayeli Carrillo, well, yes, that should have been admitted, but you are still going to put on proof of that, . . .

The court also stated that ". . . while maybe it should have been admitted that [Marisela] was Nayeli's mother, it absolutely doesn't change anything in the proof of the trial that that wasn't admitted, because you are still – because the nature and quality of that relationship was something that would have to be addressed at trial in order to establish the damages."

Since the trial court recognized the determination as discretionary, acted within the outer bounds of its discretion and consistently with I.R.C.P. 37(c)(2), and reached its determination by an exercise of reason, we hold that the court did not abuse its discretion in denying the Carrillos' request for fees under I.R.C.P. 37(c).

2. <u>I.C. § 12-120(3).</u>

The Carrillos contend that the accident occurred as the result of a commercial transaction between themselves and Boise Tire, and that they are therefore entitled to attorney fees pursuant to I.C. § 12-120(3). "Whether a district court has correctly determined that a case is based on a 'commercial transaction' for the purpose of I.C. § 12-120(3) is a question of law" over which this Court exercises free review.[8] *Fritts v. Liddle & Moeller Const., Inc.*, 144 Idaho 171, 173, 158 P.3d 947, 949 (2007).

---

[7] The district court erroneously found that Boise Tire should have admitted that Jose and Marisela were married. The parties' stipulation filed on March 12, 2009, recognized that there was no legal marriage between the two. This stipulation was based upon a change in Idaho law. Jose and Marisela met in 1999. Effective January 1, 1996, Idaho no longer recognizes marriages as being created by a mutual assumption of marital rights, duties and obligations. I.C. § 32-201.

[8] The Carrillos also contend that Boise Tire made a judicial admission that I.C. § 12-120(3) is a valid grounds for attorney fees because Boise Tire itself requested attorney fees pursuant to that provision. However, "[a] judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within the party's peculiar knowledge, not a matter of law . . . . [and] not opinion." *In re Universe Life Ins. Co.*, 144 Idaho 751, 759, 171 P.3d 242, 250 (2007) (quoting 29A Am. Jur. 2d *Evidence* § 770 (1994)). Since the question of whether a case arises from a commercial transaction is a question of law, Boise Tire's request for fees is not a judicial admission of fact.

16

Under I.C. § 12-120(3), a prevailing party is entitled to an award of attorney fees if a "commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007) (quoting *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)). All transactions other than those for personal or household purposes are considered commercial transactions. I.C. § 12-120(3). It is true that "[t]he commercial transaction ground in I.C. § 12-120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct (*see Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 369, 109 P.3d 1104, 1111 (2005)), nor does it require that there be a contract." *Blimka*, 143 Idaho at 728, 152 P.3d at 599. Thus, as long as a commercial transaction is at the center of the lawsuit, the prevailing party may be entitled to attorney fees for claims that are fundamentally related to the commercial transaction yet sound in tort.

We today make clear that, in order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose. This holding is consistent with our previous decisions. *E.g.*, *id.* (holding transaction was commercial where individual purchased 26,500 pairs of jeans from an online retailer with the intent to resell the jeans); *City of McCall v. Buxton*, 146 Idaho 656, 665, 201 P.3d 629, 638 (2009) (holding transaction was commercial where city contracted to construct storage lagoon to hold treated effluent); *Lee v. Nickerson*, 146 Idaho 5, 12, 189 P.3d 467, 474 (2008) (holding transaction was commercial where farm owners contracted to construct barn pad); *Fritts*, 144 Idaho at 173, 158 P.3d at 949 (assuming evidence supported district court's conclusion that transaction was commercial where record on appeal was inadequate to make an independent assessment). Lacking this requirement, nearly every transaction involving an individual would be classified commercial.

The Carrillos transacted with Boise Tire in order to obtain services for their personal vehicle and there is no indication that they intended to use the benefit of those services for a commercial purpose. The transaction here at issue therefore lacked the symmetry of commercial purpose necessary to trigger I.C. § 12-120(3), and the district court properly denied the Carrillos' request for attorney fees.

**D. The Carrillos are not entitled to attorney fees on appeal.**

The Carrillos seek attorney fees on appeal pursuant to I.C. § 12-120(3) and I.C. § 12-121. For the reasons provided in section C.2 above, the Carrillos are not entitled to attorney

17

fees on appeal under I.C. § 12-120(3).  To receive an I.C. § 12-121 award of fees, the entire appeal must have been pursued frivolously, unreasonably, and without foundation.  *Beus v. Beus*, 151 Idaho 235, ___, 254 P.3d 1231, 1238 (2011) (citing *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003)).  Since Boise Tire prevailed in its contention that the Carrillos' judgment must be reduced by Jose's social security benefits, its appeal as a whole was not unreasonably pursued, and the Carrillos are therefore not entitled to attorney fees under I.C. § 12-121.

## IV. CONCLUSION

We affirm the district court's denial of Boise Tire's motion for new trial, vacate the judgment, and remand to the district court with instructions to reduce Jose's personal injury award by the value of the social security disability benefits Jose had already received at the time judgment was originally entered.  Costs to the Carrillos.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

18