# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47020

| | | |
|---|---|---|
| **ERIK KNUDSEN,** | ) | |
| | ) | |
| **Plaintiff-Appellant-** | ) | |
| **Cross Respondent,** | ) | |
| | ) | **Boise, January 2021 Term** |
| **v.** | ) | |
| | ) | **Opinion Filed: March 18, 2021** |
| **J.R. SIMPLOT COMPANY, a Nevada** | ) | |
| **corporation,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Respondent-** | ) | |
| **Cross Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Deborah A. Bail, District Judge.

The decision of the district court is <u>affirmed</u>.

Strindberg & Scholnick, LLC, Boise, for Appellant. Thomas G. Hallam argued.

Anderson, Julian & Hull, LLP, Boise, for Respondent. Brian K. Julian argued.

---

BURDICK, Justice.

This employment case arises from Ada County district court and concerns whether an at-will employee can maintain a fraud action against his former employer for misrepresenting the nature of the job he was hired to perform.

J.R. Simplot Company ("Simplot") hired Erik Knudsen for a position as a packaging engineer. Early on in his employment, Knudsen was told that he would be the startup manager on a Simplot project in Grand Forks, North Dakota. Knudsen was unfamiliar with the startup manager position and questioned whether those job duties were fairly within the scope of his employment as a packaging engineer. Simplot and Knudsen disagreed as to the nature of his job, leading to the eventual termination of Knudsen's employment. After his dismissal, Knudsen filed this action, alleging fraud, promissory estoppel, breach of the covenant of good faith and fair dealing, and negligent infliction of emotional distress. The district court granted Simplot's

1

motion for summary judgment as to all of Knudsen's claims and denied Simplot's subsequent motion for attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As this matter comes to this Court on appeal from a motion for summary judgment, the facts are presented in the light most favorable to the non-moving party, Knudsen.

### A. Knudsen's recruitment and hiring.

In June 2015, a recruiter from Simplot sent Knudsen a message via LinkedIn—an employment-oriented social networking service—regarding a position as a "Senior Packaging Engineer" for the company. At the time, Knudsen had been employed at Hewlett-Packard ("HP"), a technology company with a large campus in Boise, for roughly thirteen years. Knudsen spent five years of his employment at HP as a packaging engineer and was working in that position when Simplot recruited him for the senior packaging engineer position. While satisfied with his position at HP, Knudsen chose to apply for the position at Simplot because of his respect for the company, interest in the food industry, and the possibility of career advancement.

As part of the hiring process, Knudsen received a copy of the position description for the senior packaging engineer job at Simplot, which summarized the position as follows:

> This position is responsible for [t]he J.R. Simplot Food Group packaging development efforts to include packaging design and specification, testing packaging materials, establishing written packaging specifications, and project management related to packaging equipment operation and capabilities. Supports foodservice customers and retail customers in packaging design, with particular emphasis on retail packaging design that delivers the presentation and consumer appeal attributes as designated by the client.

In addition to the summary, the position description listed responsibilities of the job such as "[s]upport Engineering in the selection of new packaging equipment" and "identifying and managing projects related to cost reduction opportunities." Finally, the position description listed the requirements of the job, including:

- Comprehensive knowledge covering all aspects related to packaging structures and equipment.

- Strong knowledge of factory operations and packaging equipment to transfer a theoretical application into real-time production.

- Ability to effectively communicate with colleagues in different departments, including . . . plant operations[.]

- Demonstrates successful project management, documentation, presentation, and problem-solving skills.

2

. . . .

- International and domestic travel as required up to 40% to support plant test runs for new products, material trials, vendor visits, packaging audits, and packaging material complaint resolution.

Knudsen submitted his application for the packaging engineer position in the fall of 2015 and was one of two candidates selected for a series of panel interviews. The first panel interview focused on Knudsen's technical expertise and was attended by members of the packaging engineering division at Simplot including: Timothy Lalley, Senior Packaging Engineer; Jason Schwark, Senior Packaging Engineer; and Craig Lamberton, Director of Packaging Engineering. The second panel primarily concerned Knudsen's leadership attributes and was attended by upper-level leadership at Simplot including: Lamberton; Kent Anderson, Director of Technical Engineering; and Lyle Schook, Senior Director of Engineering. Schook sat atop the engineering hierarchy at Simplot and the directors of the various engineering areas, e.g., technical engineering and packaging engineering, reported to him. At the time of Knudsen's hiring there was not a specific engineering area focused on startup management, instead engineers from various divisions were tapped to act as startup managers on projects.

During the interview process, Knudsen was not informed that the position of senior packaging engineer would be expected to perform as a startup manager. However, Knudsen's interview with the second panel focused heavily on his leadership abilities, including project management work he had performed at HP. In particular, Knudsen emphasized his experience leading a project in China to manufacture and release a new printer.

Following the interviews, Simplot informed Knudsen that if he should receive an offer for the packaging engineer position, it would be at a lower introductory rank because he did not have experience in the food industry. Knudsen acknowledged this difference and stated he understood the change. As Knudsen understood it, the difference between the position he was offered as an Engineer 4 and the position he applied for was merely one of salary and scope. Simplot eventually offered Knudsen the position of Engineer 4, as opposed to the original designation of Engineer 5, reporting to Lamberton, the Director of Packaging Engineering. Knudsen accepted Simplot's employment offer.

**B. Knudsen's work at Simplot and eventual termination of employment.**

Knudsen started work at Simplot on November 23, 2015, and contends that he was immediately told his position as a packaging engineer would only be part-time because he would

3

be the startup manager for a Simplot project in Grand Forks, North Dakota (the "Grand Forks project"). The Grand Forks project involved the installation of two new packaging lines for frozen food and had an estimated cost of $22 million. As startup manager for that project, Knudsen would be expected to coordinate the installation of new factory equipment and test it for functionality. This coordination could include, for example, providing for the training of employees on the new equipment, making sure spare parts were on site, ensuring the availability of materials, and communicating with the rest of the project management team to discuss the project's progress. Although startup management is a transient role, existing only so long as needed to accomplish the tasks necessary to transition from the installation of new equipment to its full operation, a startup manager could be a permanent position, working on different projects in succession.

Although Simplot disputes that Knudsen was immediately assigned to be a startup manager, on November 30—one week from his start date—Knudsen received a communications plan for the anticipated Grand Forks project that listed him as the startup manager. Soon thereafter, Knudsen was flown on the Simplot corporate jet to the site of the Grand Forks project and introduced to other members of the team as the startup manager.

In addition to his assignment as a startup manager, Knudsen points to several other instances early in his employment that underscored the unusual nature of his position compared to the other packaging engineers. For example, Simplot circulated an interoffice communication shortly after Knudsen's start date that introduced Knudsen as a new packaging engineer but indicated that Knudsen would report to a different supervisor than the other packaging engineers and focus on a different aspect of the business. This organizational change was precipitated by the departure of Lamberton, the Director of Packaging Engineering, who had played a hybrid role for Simplot and worked with both packaging materials and packaging equipment. Further, Knudsen recalls conversations with the other packing engineers, Lalley and Schwark, in which they stated that being a startup manager was outside the scope of his position. Lalley noted that he had never been asked to act as a startup manager for a project during his years at Simplot. Schwark indicated that he felt frustrated that Knudsen was spending an inordinate amount of time working as a startup manager instead of assisting with packaging engineering.

Knudsen was discouraged by his startup manager assignment and began to protest it with Simplot leadership, stating that he did not believe he had the experience or background to

4

perform the role in a way that added value to the company. Over time, tensions escalated between Knudsen and his superiors—Schook, Director of Engineering, and Anderson, Director of Technical Engineering—regarding his performance as a startup manager. Knudsen's frustrations with his employment came to a head in a meeting with Schook, who told Knudsen that he never intended to have him work as a full-time packaging engineer.

Following his conversation with Schook, Knudsen began to fear that his employment would be terminated due to his inability to successfully perform as a startup manager. He emailed Kayce McEwan, Simplot's Vice President of Human Resources, about his predicament. In his email, Knudsen claimed Simplot had misrepresented the nature and scope of the job he would be required to perform and he would never have left his secure employment at HP if he had been aware of Simplot's intent to have him work as a startup manager. Without a response to this email, and with his fears growing, Knudsen lodged a complaint with Simplot's employee complaint hotline detailing his situation. The complaint prompted a response from McEwan on July 8, 2016, which resulted in Knudsen being placed on a performance improvement plan ("PIP") on July 11.

Roughly a month after receiving his PIP, Simplot placed Knudsen on involuntary paid administrative leave and issued an ultimatum: Knudsen could either continue work under his PIP or he could resign and receive ten weeks of severance pay in exchange for a release of liability. Knudsen found neither option acceptable. Simplot eventually terminated Knudsen's employment effective September 1, 2016.

**C. Procedural History.**

Following the termination of his employment, Knudsen filed this action with claims of fraud, promissory estoppel, breach of the covenant of good faith and fair dealing, and negligent infliction of emotional distress ("NIED"). After discovery, Simplot moved for summary judgment on all of Knudsen's claims. The district court granted Simplot's motion. The district court reasoned that summary judgment on the fraud claim was appropriate because Knudsen had not presented evidence that Simplot had ever made an affirmative representation to him that he would not work as a startup manager and that Simplot was not under a duty to disclose every potential duty of the position. Similarly, the district court granted Simplot's summary judgment motion with respect to the promissory estoppel claim because it found Knudsen had not demonstrated any promise made by Simplot that Knudsen would not be asked to be a startup

5

manager. As to Knudsen's good faith and fair dealing claim, the district court granted summary judgment in Simplot's favor by concluding that nothing in the packaging engineer position description precluded Simplot from asking Knudsen to act as a startup manager. Finally, the district court granted summary judgment on Knudsen's NIED claim reasoning Knudsen had not demonstrated that Simplot breached any recognized legal duty it owed him.

Simplot subsequently moved the district court for an award of costs as a matter of right and attorney's fees pursuant to Idaho Code section 12-120(3). Knudsen resisted this motion on the basis that Simplot had not provided argument for its attorney's fees request. Simplot filed an amended memorandum in support of its request for attorney's fees and discretionary costs that included argument. The district court heard oral argument on the issue of costs and fees and denied Simplot's request in an oral ruling, reasoning that the complaint sounded in the "hybrid nature of fraud, and not in the nature of contract," and that there were no exceptional costs that warranted an award of discretionary costs.

Knudsen also moved the district court to reconsider its summary judgment ruling, submitting what he purported to be a job description for the Engineer 4 position for which he was ultimately hired. Simplot had provided this document as part of discovery before the district court considered the parties' arguments on summary judgment. In addition, Simplot contended that the document was not a job description but a "position profile," essentially a template that hiring managers use to create position descriptions offered at the Engineer 4 level. Simplot also produced evidence that Knudsen had not been provided with this document at any point during the hiring process.

Irrespective of the document's status, Knudsen highlighted language that stated that an Engineer 4 "[s]upports production efforts of the company/group by providing technical leadership to plant operating and maintenance departments to work or manage medium projects (typically $1-$5 MM or support large projects) to develop new or existing equipment, processes, and instrumentation." The Engineer 4 description also stated that "[t]hese statements are intended to describe the general nature and level of work being performed by people assigned to this classification [and t]hey are not intended to be construed as an exhaustive list of all responsibilities, duties and skills required of personnel so classified."

6

The district court denied Knudsen's motion to reconsider its grant of summary judgment, concluding that the facts in the case, even with the addition of the Engineer 4 description, did not demonstrate a material issue of fact as to any claim.

Knudsen timely appealed. Simplot cross-appealed the district court's ruling denying an award of attorney's fees.

## II. ISSUES ON APPEAL

1. Did the district court err in granting summary judgment on Knudsen's fraud claim?

2. Did the district court err in granting summary judgment on Knudsen's promissory estoppel claim?

3. Did the district court err in granting summary judgment on Knudsen's breach of the covenant of good faith and fair dealing claim?

4. Did the district court err in granting summary judgment on Knudsen's negligent infliction of emotional distress claim?

5. Did the district court abuse its discretion in refusing to award Simplot attorney's fees?

6. Is Simplot entitled to attorney's fees on appeal?

## III. STANDARD OF REVIEW

"The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion." *Hoke v. Neyada, Inc.*, 161 Idaho 450, 453, 387 P.3d 118, 121 (2016) (citing *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000)). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). This Court must liberally construe facts in the record and draw all reasonable inferences from those facts in the nonmoving party's favor. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 366, 109 P.3d 1104, 1108 (2005) (citing *State v. Rubbermaid, Inc.*, 129 Idaho 353, 356, 924 P.2d 615, 618 (1996)). "If there are conflicting inferences contained in the record or if reasonable minds might reach different conclusions, summary judgment must be denied." *Id.* (citing *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991)). However, summary judgment is appropriate where the nonmoving party fails to show evidence sufficient to establish an essential element of a claim on which they will bear the burden of proof at trial. *Partout v. Harper*, 145 Idaho 683, 688–89, 183 P.3d 771, 776–77 (2008) (citing *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988)).

7

This court uses an abuse of discretion standard to review a district court's decision to award attorney's fees. *Med. Recovery Servs., LLC v. Lopez*, 163 Idaho 281, 282, 411 P.3d 1182, 1183 (2018) (citing *Stout v. Key Training Corp.*, 144 Idaho 195, 196, 158 P.3d 971, 972 (2007)). Yet, "when an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies," which is "a question of law over which this Court exercises free review." *Id.* at 282–83, 411 P.3d at 1183–84 (quotations and citations omitted).

## IV. ANALYSIS

### A. Knudsen's fraud claim is cognizable notwithstanding the at-will employment doctrine.

As a threshold matter, we address whether Knudsen's claim that Simplot fraudulently induced him into an at-will employment relationship is a cognizable cause of action in Idaho. To that end, we conclude that Knudsen's cause of action is viable.

"Employment in Idaho is presumed to be at-will unless the employee is hired pursuant to a contract that states a fixed term or limits the reasons for discharge." *Nix v. Elmore Cnty.*, 158 Idaho 310, 317, 346 P.3d 1045, 1052 (2015) (citing *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 240–41, 108 P.3d 380, 387–88 (2005)). Employment at-will means "[w]ithout a contractual agreement limiting a party's right to terminate the employment relationship, either party may terminate it at any time or for any reason without incurring liability." *Id.* (citing *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 712, 874 P.2d 520, 523 (1994)). This rule is rooted in the judiciary's reticence to tie employees and employers to a dysfunctional relationship notwithstanding the risk that either party could be damaged by the relationship's sudden termination. *Id.*

At first blush, an action for fraudulent hiring appears to contradict this well-settled principle of Idaho law. This is to say that an aggrieved at-will employee suing his former employer resembles the type of wrongful discharge action ordinarily limited by the at-will rule. However, an important distinction exists between a fraud-in-hiring claim and a wrongful discharge claim that makes the former permissible and the latter limited in an at-will relationship.

That is, fraud-in-hiring claims concern those actions and representations that led to the formation of an employment relationship, rather than the conduct in ending that relationship. Stated differently, just because an employer may *terminate* an at-will relationship, *see Mitchell*, 125 Idaho at 712, 874 P.2d at 523, it does not follow that an employer has an unfettered ability to make any representation, true or false, to *form* that relationship.

8

In the proceedings below, the district court came to the well-reasoned conclusion that "[t]here is no reason to exclude the creation of the employment relationship from principles which generally apply to the formation of all other agreements. Other types of agreements may be induced by fraud, so, at least conceptually, can the employment relationship." We agree with the district court's reasoning and conclusion. Accordingly, we hold that an at-will employee can maintain an action against an employer for fraudulently inducing an employment relationship.

The inquiry must concentrate on the conduct leading to the formation of the employment relationship rather than after-the-fact actions or statements that led to the termination of the relationship. This is not to say that actions or statements made after hiring are not relevant to a fraudulent hiring claim, only that such evidence must be relevant to how the employment relationship was formed. With this in mind, we turn to the merits of Knudsen's fraudulent hiring claim.

**B. Summary judgment on Knudsen's fraud claim was appropriate.**

The core of Knudsen's complaint is an allegation that Simplot defrauded him by hiring him to work as a full-time packaging engineer but employing him as a part-time packaging engineer and part-time startup manager. Knudsen argued two alternative theories of fraud in relation to this allegation: either (1) Simplot affirmatively misrepresented the packaging engineer position or (2) Simplot breached a duty to disclose the nature of the position for which it was hiring. The district court granted summary judgment in Simplot's favor on the fraud claim, reasoning that Knudsen had not demonstrated that Simplot made an affirmative misrepresentation and that Simplot did not have a duty to disclose every task Knudsen may be asked to perform. We agree and, correspondingly, we affirm the district court's grant of summary judgment on Knudsen's fraud claim.

To prevail on a fraud claim, a plaintiff must prove nine elements:

(1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 847, 419 P.3d 1139, 1145 (2018) (citing *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 594, 338 P.3d 1193, 1198 (2014)). The parties' arguments and the district court's summary judgment ruling principally concern whether Knudsen raised a triable issue of fact with respect to the first two elements of his fraud claim.

9

Thus, the key inquiry is whether Knudsen presented sufficient evidence to establish that Simplot either affirmatively or by omission misrepresented the packaging engineer position.

1. There is not a triable issue of fact with respect to an affirmative misrepresentation.

Knudsen relies on three cases—*Verway v. Blincoe Packing Co.*, 108 Idaho 315, 698 P.2d 377 (Ct. App. 1985); *Harvey v. Maximus Inc.*, No. 1:14–cv–00161–BLW, 2014 WL 6474051 (D. Idaho Nov. 19, 2014); and *Meade v. Cedarapids, Inc.*, 164 F.3d 1218 (9th Cir. 1999)—to support his position that an employer's pre-hiring descriptions of a job can give rise to a fraud cause of action when the job varies from its description. Those cases and their applicability to this matter are discussed in sequence.

First, in *Verway*, the Court of Appeals addressed the propriety of a punitive damages award in a wrongful termination case. 108 Idaho at 317, 698 P.2d at 379. In so doing, the Court of Appeals considered whether the evidence presented at trial supported a punitive damages award based on the employer's fraudulent conduct. *Id.* The employer in *Verway* hired new employees during a strike to remain in operation and promised the new employees that the resolution of the strike would not impact their employment. *Id.* at 316–17, 698 P.2d at 378–79. However, once the strike was settled, the employer fired all the new employees. *Id.* The Court of Appeals reasoned that the jury could have concluded that the employer "fraudulently misrepresented to respondents that they would have permanent positions . . . intending all along to use them only as strike breakers" and held that sufficient evidence supported the jury's award of punitive damages. *Id.* at 317, 698 P.2d at 379.

Next, in *Harvey*, the federal district court considered a 12(b)(6) motion on a group of employees' fraud and promissory estoppel claims against their employer. 2014 WL 6474051, at *2–5. The employees alleged that the employer had offered them "career type work without a predetermined timeline for termination" but had already planned a reduction in force that resulted in their layoffs. *Id.* at *1–3. The employer argued, in part, that the at-will nature of the employment precluded the action. *Id.* The federal district court denied the motion to dismiss, reasoning that "at-will employment does not shield an employer from claims arising from misrepresentations about the nature of the employment" and that the employees had alleged facts, which if true, would entitle them to relief. *Id.* at *3.

Finally, in *Meade*, the Ninth Circuit considered an appeal from a grant of summary judgment in favor of an employer on a fraud claim. 164 F.3d at 1221–22. The employer in

*Meade* told employees during the hiring process that the company was growing, that employment was stable, and sales and production were increasing. *Id.* at 1221. However, those employees were eventually fired when the plant they were hired to work at closed. *Id.* The employees presented evidence that the employer had been planning to close the plant well before it hired them. *Id.* Applying Oregon law, the Ninth Circuit reversed the grant of summary judgment in favor of the employer, reasoning that a reasonable finder of fact could determine that the employer was planning to close the plant when it hired the employees and thus made affirmative misrepresentations concerning the stability and duration of the employment.[1] *Id.* at 1222.

Here, like in *Verway*, *Harvey*, and *Meade*, Knudsen has alleged that Simplot affirmatively misrepresented the nature of the position he was hired to perform. However, there are critical distinctions between those cases and Knudsen's claim that leave us unconvinced that he raised a triable issue of material fact. For instance, all the above cases concern pre-hiring employer statements about the duration or permanency of employment. In contrast, Knudsen's fraud claim turns not on the prospective duration of his employment but on the duties he would be asked to perform. Whether an employer has made good on a promise to offer permanent employment is a simple determination: either an employee's employment has been prematurely terminated or not. In comparison, the question of whether an employer has fulfilled its promise to an employee to work only within the confines of a position description is more complicated. One can imagine any number of hypothetical situations where the type of tasks asked of an employee diverge so starkly from the position the employee believed he was being hired for that a fraud cause of action could be possible. However, all these hypotheticals beg the same questions: why would an employer defraud an employee into a job they had no interest in performing and lacked the skills to be successful; and how does one ascertain whether a certain task is within the scope of employment? In short, the premise underlying Knudsen's claim is qualitatively different from the type of fraud allowed to proceed in *Verway*, *Harvey*, and *Meade.*

Moreover, even if these cases were factually applicable, none of them are binding on this Court and all are procedurally distinct from this matter. *Verway*, the Court of Appeals decision,

---

[1] The Ninth Circuit also ruled that the employees had presented facts which, taken as true, could lead a reasonable jury to conclude that the employer had violated a duty to disclose to avoid misleading the employees. *Meade*, 164 F.3d at 1222. Whether there are facts in this case from which a reasonable jury could find that Simplot had a duty to disclose is discussed in detail in the next subsection.

discusses fraudulent conduct as required for an award of punitive damages, and does not consider whether the facts in that case could give rise to a discrete cause of action for fraud. 108 Idaho at 317, 698 P.2d at 379. *Harvey* concerns only a motion to dismiss and does not delve into the type of evidentiary showing required to survive a motion for summary judgment. *Harvey*, 2014 WL 6474051, at *1. Finally, while *Meade* discusses a summary judgment ruling on a fraud claim, it does so in the context of a federal court interpreting Oregon law. *Meade*, 164 F.3d at 1221–22.

All said, *Verway*, *Harvey*, and *Meade* offer limited insight into the claim before this Court. While we have held that a claim of hiring fraud is viable in Idaho, we are unconvinced that the facts of Knudsen's claim survive summary judgment because Knudsen has not shown any affirmative misrepresentation made by Simplot.

On that note, we recognize that Knudsen is a skilled professional and is resolute that the duties of a packaging engineer do not include startup management. However, Knudsen has not made a showing as to what led him to this belief. The general statements in Simplot's position description embrace the possibility that the employee could be asked to perform functions associated with startup management. For instance, the packaging engineer position description required "project management related to packaging equipment operation and capabilities," "identifying and managing projects related to cost reduction opportunities," "comprehensive knowledge covering all aspects related to packaging structures and equipment," and "strong knowledge of factory operations and packaging equipment to transfer a theoretical application into real-time production."

Further, Knudsen's offering of the Engineer 4 description as part of his motion for reconsideration is equally unpersuasive. Knudsen presented no evidence that he asked for, received, or read this description prior to accepting Simplot's job offer. Without actually receiving this description, Knudsen cannot use it to demonstrate that Simplot made an affirmative misrepresentation nor that Knudsen justifiably relied on it. And, even if this Court considered the contents of the Engineer 4 description, that document contains a clear disclaimer that it is not "an exhaustive list of all responsibilities, duties and skills of personnel" classified at the Engineer 4 level.

We believe no juror could reasonably conclude that Simplot made an affirmative misrepresentation by asking Knudsen to act as a startup manager on the Grand Forks project.

12

Correspondingly, we conclude that Knudsen has not raised a triable issue of fact with respect to several elements of his claim of fraud by affirmative misrepresentation.

2. <u>Simplot did not have a duty to disclose.</u>

"Omission of information may constitute fraud when a duty to disclose exists." *Humphries v. Becker*, 159 Idaho 728, 736, 366 P.3d 1088, 1096 (2016) (citations omitted). A duty to disclose may arise

> (1) if there is a fiduciary or other similar relationship of trust and confidence between the two parties; (2) in order to prevent a partial statement of the facts from being misleading; or (3) if a fact known by one contracting party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it.

*Id.* (citing *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000)). It is for the Court to decide, as a matter of law, whether the facts asserted would give rise to a duty to disclose if proven. *Printcraft Press, Inc. v. Sunnyside Park Utils., Inc.*, 153 Idaho 440, 452, 283 P.3d 757, 769 (2012).

Here, Knudsen asserts that Simplot had a duty to disclose that the position would include performing as a startup manager to either prevent the position description from being a misleading partial expression of facts or because that fact was so vital as to make the contract voidable if the mistake was mutual.

With respect to Knudsen's first argument, the district court reasoned that the job description for the packaging engineer position was very general and did not limit the type of tasks Knudsen would be asked to perform by Simplot. It determined that Knudsen had not pointed to any specific fact which misled him about the duties he would be required to perform, nor did Knudsen ask any questions of Simplot during the hiring process about what he would be working on for the company. In sum, the district court concluded that "[i]t is not reasonable to require employers to list every possible task which they might require an employee to perform."

As to Knudsen's second argument, the district court concluded that there was no evidence to demonstrate that Simplot had knowledge of Knudsen's aversion to startup management. The district court reasoned that, even assuming Simplot intended Knudsen to work as a startup manager before it hired him, there was no reason for Simplot to suspect that Knudsen mistakenly believed he would not be asked to perform that job for the company. The district court reiterated, "it is not realistic to impose upon an employer the affirmative duty to disclose all possible tasks that they might need to perform."

13

We concur with the district court's analysis. Here, even assuming facts and drawing inferences in Knudsen's favor, there is not a genuine issue of fact that would preclude summary judgment. Knudsen has presented evidence from which a reasonable juror could infer that Simplot did not intend for Knudsen to perform exclusively packaging engineering tasks. For example, Anderson, the Director of Technical Engineering, stated that there was not a "100 percent workload for . . . a new employee to come in and work on packaging materials and [Simplot] had a need for the equipment side of things." Further, Knudsen alleges that Schook, the Director of Engineering, told him: "I never intended to put you to be a full-time packaging engineer from the day I hired you." Yet, the description for the position was broad and required program management skills, including a knowledge of both packaging materials and equipment. As the district court indicated, Knudsen has not pointed to a partial statement of fact that misled him other than his resolute belief that a packaging engineer does not perform startup management tasks. And, as above, the contents of the Engineer 4 description cannot form the basis of a claim that Simplot presented a misleading partial statement of fact when Knudsen never asked for—nor was he provided with—the document as part of the hiring process. In short, Knudsen has not raised a genuine issue of fact with respect to Simplot making a misleading partial statement of fact because Knudsen has not shown evidence demonstrating how the information he was provided would deceive him into the conclusion that the position would not include acting as a startup manager.

Similarly, while Knudsen is steadfast in his contention that he would never have accepted employment with Simplot had he known he would be asked to act as a startup manager, he has not demonstrated that Simplot had reason to know of his aversion. To the contrary, Knudsen relied on the strength of his project management skills at HP during his interviews with Simplot. Knudsen stated that his work for HP in China taking a printer from design to production was the "highlight" of his resume. Moreover, he indicated that he did not disclose his distaste for project management work to Simplot during the interview process because he thought doing so would jeopardize his employment prospects as a packaging engineer. Accordingly, Knudsen has not demonstrated a triable issue of fact with respect to whether Simplot had a duty to disclose because there is no reason why Simplot would have had knowledge of Knudsen's refusal to perform startup management work.

14

Considering the above, we conclude the district court did not err in granting summary judgment to Simplot on Knudsen's fraud claim. There was no affirmative misrepresentation. The position description was broad and encompassed a wide variety of tasks not limited to packaging engineering. That description specifically stated that program management would be required. In addition, Knudsen did not raise an issue of fact as to whether he received or relied on the Engineer 4 description and that description also included project management duties. Likewise, Simplot did not have a duty to disclose to Knudsen that he would be asked to perform as a startup manager. The position description was not a partial and misleading statement of fact. Further, Knudsen has not shown that Simplot was aware that he would not be amenable to performing as a startup manager. As such, we affirm the district court's grant of summary judgment on the fraud claim.

## C. Summary judgment was proper on Knudsen's promissory estoppel claim.

In general, under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or [forbearance] on the part of the promisee or a third person and which does induce such action or [forbearance] is binding if injustice can be avoided only by enforcement of the promise." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 795, 435 P.3d 1106, 1115 (2019) (quoting *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 67–68, 625 P.2d 417, 421–22 (1981)). A plaintiff must prove four elements to succeed on a promissory estoppel claim: "(1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have been reasonable." *Id.* (quoting *Zollinger v. Carrol*, 137 Idaho 397, 399, 49 P.3d 402, 404 (2002)). Promissory estoppel is a substitute for consideration, "not a substitute for an agreement between parties." *Profits Plus Cap. Mgmt., LLC v. Podesta*, 156 Idaho 873, 891, 332 P.3d 785, 803 (2014) (quoting *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005)). "Thus, where there is evidence of adequate consideration, the doctrine of promissory estoppel is of no consequence." *Id.* (citation omitted).

Here the district court concluded that Knudsen failed to demonstrate that Simplot promised he would not be asked to perform startup management duties. Knudsen argues that the promise Simplot broke was not a promise that Knudsen would not be a startup manager; rather, it was a promise that Knudsen would work full-time as a packaging engineer. Yet, Knudsen's

15

argument neglects the foundational purpose of promissory estoppel—that it acts only as a substitute for consideration. *See Profits Plus Cap. Mgmt., LLC*, 156 Idaho at 891, 332 P.3d at 803. There is no argument in this case that Knudsen's employment agreement failed for want of consideration, so there is no reason in this case to apply the doctrine of promissory estoppel. Simplot offered Knudsen a position as an Engineer 4 and Knudsen accepted that position. Accordingly, we hold that summary judgment was appropriate on Knudsen's promissory estoppel claim because the doctrine of promissory estoppel was inapplicable as a matter of law.

### D. Summary judgment was appropriate on Knudsen's good faith and fair dealing claim.

"A covenant of good faith and fair dealing is implied in all employment agreements—including at-will employment relationships." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 562, 212 P.3d 982, 992 (2009) (citing *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 242–43, 108 P.3d 380, 389–90 (2005)). That covenant mandates that the parties to an employment agreement perform the obligations of that agreement in good faith, "and a violation occurs when either party violates, qualifies, or significantly impairs any benefit or right of the other party under the contract." *Id.* "The covenant only arises in connection with the terms agreed to by the parties and does not create new duties that are not inherent in the employment agreement." *Id.* (citing *Jones v. Micron Tech., Inc.*, 129 Idaho 241, 247, 923 P.2d 486, 492 (Ct. App. 1996)).

The district court concluded that the job description for Knudsen's position did not preclude Simplot asking him to perform as a startup manager. The district court noted that the position description was broad. It required traveling, assisting production runs, "project management related to equipment operation and capabilities," and working on-site at plant locations. In addition, the district court highlighted that the position description required "[s]trong knowledge of factory operations and packaging equipment to transfer theoretical application into real-time production[,]" as well as project management skills. Based on the above, the district court concluded summary judgment was appropriate because Simplot's request for Knudsen to act as a startup manager fell within the broad contours of the position description and did not deprive Knudsen of the benefit of his employment agreement. We concur with the district court's analysis and hold that summary judgment was appropriate on Knudsen's good faith and fair dealing claim.

Knudsen also argues that the district court ignored his argument that Simplot retaliated against him for filing a complaint with the employee complaint hotline, in violation of Simplot

16

company policy. He relies on *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), to argue that an employer's retaliation against an employee in violation of an employee handbook can be a breach of the covenant of good faith and fair dealing.

An employee handbook can be an element of an employment contract in an at-will employment relationship. *Metcalf*, 116 Idaho at 625, 778 P.2d at 747 (citing *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986)). An employer's policies and statements may give rise to an implied-in-fact agreement with an employee to limit how or when an employee may be discharged. *Bollinger v. Fall River Elec. Co-op, Inc.*, 152 Idaho 632, 638, 272 P.3d 1263, 1269 (2012). "However, such statements must be more than vague statements of opinion or prediction, and policies must manifest an intent that they become part of the employment agreement." *Id.* (citations omitted).

Knudsen is correct that the district court did not specifically address his retaliation argument in its decision on Simplot's summary judgment motion. However, a good faith and fair dealing claim cannot be used to add additional terms to a contract. *See Van*, 147 Idaho at 562, 212 P.3d at 992. Thus, in order to fall within the purview of a good faith and fair dealing claim, Knudsen would need to raise a question of fact as to whether Simplot's non-retaliation policy was an express or implied term of his employment contract.[2] To that end, Knudsen asserts that a Simplot representative stated in an email that "it is a violation of Company policy to retaliate against any employee by taking an adverse employment action against a person for filing a complaint." Knudsen has not offered any other information on the record nor argument as to how this isolated statement created an implied term of his employment agreement with Simplot. Indeed, Knudsen has not produced the Simplot employee handbook or any information as to whether the employee he communicated with had the express or implied authority to bind Simplot to additional contract terms. Accordingly, we conclude that the district court did not err in declining to address Knudsen's anti-retaliation argument because he did not provide a factual basis for the claim.

---

[2] It is worth noting that the claim that Simplot violated its anti-retaliation policy would more appropriately be a breach of contract action, not an action for breach of the implied covenant of good faith and fair dealing. *See Metcalf*, 116 Idaho 622, 778 P.2d 744 (first addressing whether an employee handbook altered the terms under which an employee could be fired, then addressing whether an at-will employee could pursue a good faith and fair dealing claim against their employer).

17

In light of the above, we hold that summary judgment was appropriate on Knudsen's good faith and fair dealing claim because he did not demonstrate a triable issue of material fact as to whether Simplot deprived him of the benefit of any term of his employment agreement.

**E. Summary judgment was appropriate on Knudsen's NIED claim.**

The district court granted summary judgment in Simplot's favor on Knudsen's NIED claim because he had not demonstrated how Simplot breached any recognized legal duty. Knudsen's argument hinges on the resolution of his fraud claim. He contends that if he successfully proves that claim, then he has also demonstrated the breach of a legal duty not to commit fraud. Simplot responds by noting that the general rule is that emotional distress damages are not recoverable in fraud actions.

"Idaho recognizes the tort of negligent infliction of emotional distress where the employer owes the employee a legal duty." *Hatheway v. Bd. of Regents of Univ. of Idaho*, 155 Idaho 255, 270, 310 P.3d 315, 330 (2013) (citing *Nation v. State, Dep't of Corr.*, 144 Idaho 177, 191, 158 P.3d 953, 967 (2007)). "The elements of negligent infliction of emotional distress are (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013) (citations omitted). "A legal duty is one recognized by law that requires the defendant to conform to a certain standard of conduct." *Hatheway*, 155 Idaho at 270, 310 P.3d at 330. In general, emotional distress damages cannot be recovered in a fraud action. *Umphrey v. Sprinkel*, 106 Idaho 700, 711–12, 682 P.2d 1247, 1258–59 (1983).

Here, Knudsen argues that Simplot breached a duty not to commit fraud and, therefore, Knudsen can raise a fact issue with respect to his NIED claim. Knudsen analogizes to *Hatheway*, where this Court held that the Idaho Human Rights Act created duties for employers the violation of which could support a NIED claim. S*ee* 155 Idaho at 270, 310 P.3d at 330. However, this case does not concern any statutory duties. Further, Knudsen has not articulated why the general proscription on emotional distress damages in fraud actions should not apply when an employer commits fraud. As such, we find Knudsen's argument that he can succeed on his NIED claim if he succeeds on his fraud claim unavailing.

Knudsen also argues in the alternative that this Court could find that Simplot breached its general duty not to cause foreseeable harm to others. However, Knudsen does not argue why this

Court ought to adopt a duty for an employer to disclose every task an employee may be asked to perform during the hiring process. *See Nation*, 144 Idaho at 190–91, 158 P.3d at 966–67 (recognizing the general duty to prevent foreseeable harm to others and analyzing whether a previously unrecognized duty could fit within this general duty based on the multifactor test applied in *Rife v. Long*, 127 Idaho 841, 908 P.2d 143 (1995)).

Based on the forgoing, we affirm the district court and hold that summary judgment is proper on Knudsen's NIED claim because he has not demonstrated that Simplot breached a recognized legal duty.

### F. The district court did not abuse its discretion in denying Simplot's request for attorney's fees.

Simplot cross-appeals the district court's denial of its request for attorney's fees pursuant to Idaho Code section 12-120(3). Simplot argues that the gravamen of Knudsen's complaint was a commercial transaction and that Knudsen triggered application of Idaho Code section 12-120(3) by requesting fees on that basis in his complaint. The district court made an oral ruling denying Simplot's request for fees because the case sounded in "a hybrid nature of fraud, and not in the nature of [a] contract action that would warrant attorney's fees."

Idaho Code section 12-120(3) provides that the prevailing party "in any civil action to recover on . . . a commercial transaction . . . shall be allowed a reasonable attorney's fee." I.C. § 12-120(3). That section further defines "commercial transaction" as "all transactions except transactions for personal or household purposes." *Id.* "[I]n order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012). "Actions brought for breach of an employment contract are considered commercial transactions, subject to the attorney fee provision of I.C. § 12-120(3)." *Oakes v. Boise Heart Clinic Physicians, PLLC*, 152 Idaho 540, 547, 272 P.3d 512, 519 (2012) (citing *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 415, 179 P.3d 1064, 1071 (2008)).

Where there is a commercial transaction, this Court uses a two-part test to determine if section 12-120(3) applies: the commercial transaction must be "integral to the claim" and also "constitute[] the basis upon which the party is attempting to recover." *Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 26–27, 293 P.3d 645, 650–51 (2013) (citing *Carrillo*, 152 Idaho at 755–56, 274 P.3d at 1270–71). In other words, recovery of attorney's fees under section 12-120(3) hinges on "whether the gravamen of a claim is a commercial transaction." *Sims v.*

19

*Jacobson*, 157 Idaho 980, 985, 342 P.3d 907, 912 (2015) (citation omitted). "Courts analyze the gravamen claim by claim." *Id.* (citations omitted). Where the gravamen of a claim is a commercial transaction, "the prevailing party may be entitled to attorney fees for claims that are fundamentally related to the commercial transaction yet sound in tort." *Carrillo*, 152 Idaho at 756, 274 P.3d at 1271.

Further, "[t]hat both parties have asked for attorney fees under section 12-120(3) does not mean such an award is automatically appropriate." *Brunobuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 222, 457 P.3d 860, 874 (2020) (citing *Soignier v. Fletcher*, 151 Idaho 322, 326–27, 256 P.3d 730, 734–35 (2011)). "A party seeking fees based on a mere request under I.C. § 12-120(3) must show that a commercial transaction was the gravamen of the [claim] before a court may award fees." *Garner v. Povey*, 151 Idaho 462, 470, 259 P.3d 608, 616 (2011). However, where there are "allegations in the complaint that the parties entered into a commercial transaction and that the complaining party is entitled to recover based upon that transaction" an award of fees under section 12-120(3) is triggered. *Id.*; *see also Carter v. Gateway Parks, LLC*, No. 47246, 2020 WL 6387860, at *10 (Idaho Nov. 2, 2020) ("[Appellant] cannot now assert that this case does not involve a commercial transaction because he requested attorney fees under section 12-120(3) in his underlying complaint.").

Yet, where there are multiple claims in an action, and only some qualify for a fee award under section 12-120(3), attorney's fees are properly denied if those claims are "inseparably intertwined." *See Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 77–79, 910 P.2d 744, 749–51 (1996) (concluding that a district court's denial of attorney's fees under section 12-120(3) was appropriate where the district court determined the fees associated with claims that satisfied section 12-120(3) were "inseparably intertwined" with those that did not). When a party has prevailed on claims for which it is statutorily entitled to an award of attorney's fees and claims upon which it is not, this Court has held "that the prevailing party must apportion the fees between the claim upon which it was entitled to recover . . . and the claim upon which it was not." *Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 815, 303 P.3d 171, 174 (2013). "Where fees were not apportioned between a claim that qualifies under I.C. § 12-120(3) and one that does not, no fees are to be awarded." *Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001) (citing *Brooks*, 128 Idaho at 79, 910 P.2d at 752).

In this matter, Knudsen requested fees pursuant to Idaho Code section 12-120(3) in his complaint, but this is not dispositive. Although the parties requested fees on this basis, the party seeking fees must also demonstrate a commercial transaction was the gravamen of each claim. On appeal, Knudsen concedes that his fraud claim as well as his good faith and fair dealing claim concern a commercial transaction. Thus, our inquiry is focused on whether Knudsen's promissory estoppel claim and his NIED involve a commercial transaction.

We agree with Knudsen that the gravamen of his promissory estoppel claim was not a commercial transaction within the ambit of section 12-120(3). While the relationship between Knudsen and Simplot was for a commercial purpose, promissory estoppel is an equitable doctrine that serves as a substitute for consideration and thus "does not amount to a *transaction* as that term is expressed in Idaho Code section 12-120(3)" *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 800, 435 P.3d 1106, 1120 (2019).

In contrast, Knudsen's NIED claim does concern a commercial transaction. Knudsen asserts that Simplot breached a duty not to commit fraud by misrepresenting the packaging engineer position to him and this fraud caused him emotional distress. Though the NIED claim sounds in tort, it is fundamentally related to a commercial transaction—the negotiation and formation of an employment agreement—and thus qualifies for an award of fees under section 12-120(3). *See Carrillo*, 152 Idaho at 756, 274 P.3d at 1271.

Although we conclude that several of Knudsen's claims concern a commercial transaction to which section 12-120(3) would apply, we nonetheless decline to reverse the district court's denial of Simplot's motion because Simplot provided no basis on which the fees between the various claims could be apportioned. Simplot did not provide argument below as to how the fees could be apportioned between the claims and the district court did not abuse its discretion in reaching the conclusion that that hybrid nature of the claims did not justify an award under section 12-120(3). The district court recognized the issue was one of discretion, acknowledging that it was in its discretion to award fees or not. Further, the district court acted within the boundaries of that discretion by considering only whether an award of fees was appropriate on the grounds that Simplot requested. The district court acted consistently with applicable legal standards, concluding that the hybrid nature of the claims did not allow for an award of fees. We take this conclusion to be in the same vein as the district court's conclusion in *Brooks* that fees were inappropriate under section 12-120(3) when the claims to which section

12-120(3) applied and those to which it did not were "inseparably intertwined." 128 Idaho at 77–79, 910 P.2d at 749–51. The district court was not required to sua sponte apportion fees and Simplot made no argument as to how or why the fees should be apportioned. Accordingly, the district court reached its conclusion through the exercise of reason, considering only the claims and arguments before it. In sum, the district court's denial of Simplot's motion for attorney's fees under Idaho Code section 12-120(3) was not an abuse of discretion.

### G. Simplot is not entitled to attorney's fees on appeal.

On appeal, Simplot again requests attorney's fees pursuant to Idaho Code section 12-120(3). That section requires a prevailing party. I.C. § 12-120(3). Where a party loses on its cross-appeal, it is not a prevailing party. *Tapadeera v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012) ("a respondent should carefully consider whether to file a cross-appeal because losing the cross-appeal may result in not being able to recover attorney fees incurred in defending the appeal"); *see also KEB Enters., L.P. v. Smedley*, 140 Idaho 746, 755, 101 P.3d 690, 699 (2004). Though Simplot prevailed on the issues Knudsen appealed to this Court, it did not prevail with respect to the attorney's fees issue it cross-appealed. Accordingly, we decline to award attorney's fees under section 12-120(3) on appeal because we conclude Simplot is not the prevailing party.

## V.    CONCLUSION

Based on the foregoing, we hold that summary judgment was appropriate on all of Knudsen's claims. In addition, we conclude that the district court did not abuse its discretion in denying Simplot's request for attorney's fees as there was no argument to apportion fees. Because both parties prevailed in part we decline to award costs or attorney's fees on appeal.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and Justice Pro Tem SCHROEDER **CONCUR.**

22